UNITED STATES, Appellee,

v.

Thomas L. COURTNEY, Private First Class, U. S. Army, Appellant.

No. 30,864.

U. S. Court of Military Appeals.

July 2, 1976.

Captain John M. Nolan argued the cause for Appellant, Accused. With him on the brief were Colonel Alton H. Harvey, Lieutenant Colonel James Kucera, Captain Michael R. Caryl, and Captain Edward E. Shumaker, III.

Captain Jonathan D. Glidden argued the cause for Appellee, United States. With him on the brief were Lieutenant Colonel Donald W. Hansen, Major John T. Sherwood, Jr., and Captain John R. Erck.

## OPINION OF THE COURT

FLETCHER, Chief Judge:

Following the accused's arraignment on a single charge alleging the wrongful possession of marihuana in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934,[1] his counsel, Captain Zollie Cowart, moved to dismiss the charge or, in the alternative, for a ruling that the maximum confinement penalty should be limited to that imposable for a marihuana possession offense brought under Article 92, UCMJ.[2] As a basis for his motion, Captain Cowart sought to establish that the accused had been denied equal protection of the laws as that concept is embodied in the Fifth Amendment.[3] *See, e. g., U. S. Dept. of Agriculture v. Moreno*, 413 U.S. 528, 532–33, 93 S.Ct. 2821, 37 L.Ed.2d 782 (1973); *Richardson v. Belcher*, 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971). *See also United States v. Larner*, 1 M.J. 371, 375

(1976) (Fletcher, C. J., concurring). In support thereof, a stipulation of fact was introduced which indicated that, of the 49 marihuana and habit-forming drug charges preferred in the 3d Infantry Division during the first 5 months of 1974, 44 of the charges (90%) were laid under Article 92 with its 2-year ceiling on confinement. A second defense exhibit established that another private in the 3d Division, alleged to have possessed a greater quantity of hashish than the accused had been prosecuted under Article 92.[4] Both the accused and the other individual contested their guilt at trial, and neither had a record of previous convictions.[5] For purposes of this appeal, we conclude that the circumstances surrounding the two incidents were "substantially similar." *See Simon v. Woodson*, 454 F.2d 161, 164 (5th Cir. 1972).

In addition to the proffered exhibits, trial defense counsel called the accused's commanding officer, Captain Gary Corkins, to the stand to explain the circumstances surrounding his decision to prefer the charge under Article 134. Captain Corkins related that he originally had preferred the marihuana charge under Article 92, but "it was kicked back by the Courts and Boards at Battalion level and they said, 'No,' that this

1. In pertinent part, the charge read:
   In that [the accused] . . . did, at Wildflecken, Germany, on or about 1430 hours, 9 April 1974, wrongfully have in his possession 334 grams, more or less, of marihuana in hashish form.

2. The maximum imposable penalty for wrongful possession of marihuana, if charged under Article 134, is a dishonorable discharge, *confinement at hard labor for 5 years*, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. A similar offense alleging a violation of Army Regulation 600–50 and laid under Article 92 is punishable by a dishonorable discharge, *confinement at hard labor for 2 years*, forfeiture of all pay and allowances, and reduction to the lowest enlisted grade. Paragraph 127c, Manual for Courts-Martial, United States, 1969 (Rev.).

3. As I observed in my concurring opinion in *United States v. Larner*, 1 M.J. 371, 375 (1976), even though the Fifth Amendment contains no express equal protection clause, the principle long has been applied via the Fifth Amendment's language which forbids discrimination

which is " 'so unjustifiable as to be violative of due process.' " *Schneider v. Rusk*, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964). *Accord, Frontiero v. Richardson*, 411 U.S. 677, 680 n. 5, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973); *Shapiro v. Thompson*, 394 U.S. 618, 641–42, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Bolling v. Sharpe*, 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

4. The difference in treatment accorded the two defendants cannot be tied to any change in circumstance occasioned by the Supreme Court's qualified approval of Article 134 in *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974). That decision was not released until after both individuals had been convicted.

5. The accused's record does reflect an Article 15 imposed for disrespect toward a superior commissioned officer. It is unclear from the documents filed with regard to the other individual whether he had received nonjudicial punishment.

should be charged under Article 134. . ." Asked why he finally elected to use Article 134, Captain Corkins replied, "To be quite frank, I just more or less took his advice. He said it should be changed, and I just took his advice. There was no particular reason."

When the trial judge inquired whether a difference in maximum penalty was a factor he considered, Captain Corkins, after vaguely recalling that there was such a difference, stated that he "honestly [could not] say one way or another" although he admitted that the penalty "could be" a factor. At the conclusion of Captain Corkins' testimony, the trial judge denied the motion without entertaining argument on the constitutional question. *Contra*, paragraph 53 g, Manual for Courts-Martial, United States, 1969 (Rev.). The accused subsequently was found guilty of the charge and sentenced to a period of confinement in excess of the 2-year maximum which would have been applicable had the accused been arraigned on the Article 92 charge originally preferred by Captain Corkins.[6]

We believe disposition of the equal protection question is governed by the rationale of *Skinner v. Oklahoma*, 316 U.S. 535, 62

**6.** In pertinent part, the Article 92 charge alleged:

> In that [the accused] . . . did, at Wildflecken, Germany, on or about 1430 hours, 9 April 1974, violate a lawful General Regulation, to wit: Army Regulation 600–50 as modified by change two, dated 19 April 1973, by having in his possession . . . a controlled substance, to wit: Hashish.

**7.** The dissenting opinion is somewhat misleading to the extent that it implies that the Supreme Court in *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), sanctioned a prosecutor's unfettered discretion to elect to prosecute either under a felony statute or an identical misdemeanor provision. In fact, *the decision held that the trial judge did not err in concluding that the misdemeanor charge was not a lesser included offense and hence no* jury instruction to that effect was required. The Court went on to state that "[w]hatever other questions might have been raised as to *the validity of petitioner's conviction and sentence* . . . were questions of law for the court. *No such questions are presented here.*" *Id.* at 135, 76 S.Ct. at 688 (emphasis added).

S.Ct. 1110, 86 L.Ed. 1655 (1942).[7] There the Supreme Court struck down a secondary penalty scheme which drew an unwarranted distinction in terms of punishment between larceny and embezzlement. Oklahoma's Habitual Criminal Sterilization Act, Okl.St.Ann., Tit. 57, §§ 171 et seq., provided that an individual twice convicted of grand larceny was subject to sterilization under certain conditions whereas a person with multiple convictions for embezzlement was not.

As in *Skinner*, where the Supreme Court concluded that Oklahoma's embezzlement and grand larceny statutes were "intrinsically the same," 316 U.S. at 541, 62 S.Ct. 1110, we find drug offenses punished by the Army under Article 92, UCMJ, virtually identical with those punished under Article 134, UCMJ.[8] The soldier who possesses marihuana in violation of Article 134 also violates AR 600–50 and hence Article 92. The converse is also true. Drug possession which constitutes a violation of Article 92 runs afoul of Article 134. The difference in penalty consequences is generated not from the accused's illegal act but rather solely from the accuser's unbridled discretion to charge the offense either under Article 92 or Article 134.

> The dissent in *Berra* acknowledged that the majority had "[left] open to petitioner the opportunity to challenge his sentence by a motion to correct it under 28 U.S.C. § 2255," but nevertheless suggested that the equal protection issue constituted "plain error" which warranted appellate relief. *Id.* at 137 n. 4, 138, 76 S.Ct. at 689.
>
> Insofar as the equal protection question before us is concerned, *Berra* stands for nothing more than an appropriate expression of judicial philosophy that ordinarily perceived errors should be addressed by the appellate courts only after the trial forum has had first opportunity to evaluate the question with the benefit of counsel's arguments. Unlike in *Berra*, just such an opportunity was afforded the trial judge in this case.

**8.** The situation is materially different from that sanctioned in *United States v. Koonce*, 485 F.2d 374, 377–78 (8th Cir. 1973). As the Eighth Circuit noted, what would constitute a violation of the Federal perjury statute, 18 U.S.C. § 1621, would not necessarily be violative of 18 U.S.C. § 1623, which penalizes false declarations made before a court or grand jury of the United States.

This is not an instance in which Congress or the President has sought to recognize varying "degrees of evil." *Truah v. Raich,* 239 U.S. 33, 43, 36 S.Ct. 7, 60 L.Ed. 131 (1915). Nor is this a case in which a uniform policy exists with regard to how servicemen who commit drug offenses will be charged thereby affording equal treatment to all offenders. *Buck v. Bell,* 274 U.S. 200, 208, 47 S.Ct. 584, 71 L.Ed. 1000 (1927). "When the law lays an unequal hand on those who have committed intrinsically the same quality of offense . . . it has made as invidious a discrimination as if it had selected a particular race or nationality for oppressive treatment." *Skinner v. Oklahoma, supra,* 316 U.S. at 541, 62 S.Ct. at 1113, *citing Yick Wo v. Hopkins,* 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Gaines v. Canada,* 305 U.S. 337, 59 S.Ct. 232, 83 L.Ed. 208 (1938).

The equal protection infirmity here is more subtle than the usual situation in which a particular class of individuals is unreasonably subjected to different treatment under the very language of the statute. *E. g., McLaughlin v. Florida,* 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *Skinner v. Oklahoma, supra.* Nevertheless, "a law nondiscriminatory on its face may be grossly discriminatory in its operation." *Griffin v. Illinois,* 351 U.S. 12, 17 n. 11, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956); *accord, Williams v. Illinois,* 399 U.S. 235, 242, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970). While equal protection decisions more frequently focus upon the effect of enunciated statuto-

ry guidance which highlights a difference in treatment among various classes of individuals, here it is the utter lack of such guidance coupled with the existence of two statutes which because of the table of maximum penalties punish virtually identical conduct in different ways that violates the Fifth Amendment. Neither Government counsel at trial nor on this appeal has suggested what, if any, standard is utilized in determining whether to charge an offense under Article 134 as opposed to Article 92 where the misconduct is violative of both provisions of the Uniform Code.[9] Indeed, the individual who preferred the charge readily admitted that "there was no particular reason" other than the courts-and-boards' recommendation that he could and should use Article 134.[10]

The Government has urged that numerous review procedures prevent an arbitrary and invidious choice between the two statutes. While certainly true that sworn charges pass through numerous channels before the actual trial proceeds, review procedures, in and of themselves, are no substitute for standards which assure the central aim of our judicial system: that "all people charged with crime must, so far as the law is concerned, 'stand on an equality before the bar of justice in every American Court.'" *Griffin v. Illinois, supra,* 351 U.S. at 17, 76 S.Ct. at 590, quoting *Chambers v. Florida,* 309 U.S. 227, 241, 60 S.Ct. 472, 84 L.Ed. 716 (1940). In fact, as previously noted, it was just such a review procedure

9. Government counsel's reliance upon *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed. 446 (1962), as support for a contrary result is misplaced. There the accused contended that the prosecutor's failure to enforce West Virginia's recidivist statute in every proceeding in which it might apply barred, on equal protection grounds, his being penalized more severely under the statute's provisions. In rejecting this contention, the Supreme Court stressed that the different treatment accorded different defendants just as easily could have been "due to lack of knowledge of the prior offenses" rather than being "the result of a deliberate policy of proceeding only in a certain class of cases or against specific persons." *Id.* at 456, 82 S.Ct. at 505. Even though "some selectivity in enforcement" was sanctioned, the Supreme Court nevertheless bottomed its decision on the peti-

tioner's failure to satisfy his burden of proof in light of the state's evidence which rationally justified the difference in treatment accorded various defendants. *Yick Wo v. Hopkins,* 118 U.S. 356, 374, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). *Compare United States v. Burnett,* 505 F.2d 815 (9th Cir. 1974), *cert. denied sub nom., Lyon v. United States,* 420 U.S. 966, 95 S.Ct. 1361, 43 L.Ed.2d 445 (1975). *See also United States v. Berrigan,* 482 F.2d 171, 174 (3d Cir. 1973).

10. There are, of course, instances in which a charge brought under Article 92 would subject a defendant to a more serious penalty than that imposable for the same misconduct under Article 134. A similar equal protection question is raised in those cases.

in this case which led to the abuse with which we are faced. Thus, rather than diminishing or eliminating the problem, the review process actually caused it in this instance.

It also has been suggested that the present multiple charging option is necessary because of peculiarities in the legal schemes of foreign countries. In essence, the Government suggests that prosecutions under Article 134 are made more difficult where a soldier's conduct in a foreign jurisdiction may not constitute a violation of their law, and federal statutes cannot be assimilated under the "crimes and offenses not capital" section of Article 134. The law of a foreign sovereign has no impact upon an Article 134 charge alleging conduct prejudicial to "good order and discipline in the armed forces." By this section, the Uniform Code makes criminal certain conduct which harms those within the military society. Thus, the law of a foreign country is immaterial; and hence we find not even a rational justification for the punishment differential between Article 92 and Article 134 prosecutions for unlawfully possessing marihuana. See Ortwein v. Schwab, 410 U.S. 656, 660, 93 S.Ct. 1172, 35 L.Ed.2d 572 (1973).

We conclude, therefore, that the trial judge erred in denying the defense motion that the marihuana possession offense penalty be limited to that imposable for violating Article 92, U.C.M.J. Even though the Court of Military Review reduced the accused's period of confinement to 20 months in the exercise of its clemency powers, such action was taken using the 5-year maximum penalty as a yardstick. Because of the severity of the affirmed sentence in relation to the appropriate 2-year maximum confinement penalty, we believe there remains a fair risk that the accused has been prejudiced as to sentence. Article 59(a), UCMJ.

The decision of the United States Army Court of Military Review is affirmed as to findings but reversed as to sentence. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Military Review for curative action with respect to the sentence.

Judge PERRY concurs.

COOK, Judge (dissenting):

On constitutional and statutory grounds, and on prior opinions of this Court, I disagree with the majority opinion.

Assuming that Army Regulation 600-50 has the same force and consequence as an article of the Uniform Code of Military Justice, an assumption implicit in the majority opinion but explicitly rejected in United States v. Walter, 20 U.S.C.M.A. 367, 43 C.M.R. 207 (1971), it does not follow that an accused whose conduct violates both the regulation and Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934, is denied equal protection of the law because he is prosecuted for a violation of the article rather than for disobeying the regulation in contravention of Article 92(1), UCMJ, 10 U.S.C. § 892(1). When two statutes prohibit the same conduct but prescribe different punishments, the accused has no right to compel the government to prosecute under the statute providing for the lesser penalty. In Deutsch v. Aderhold, 80 F.2d 677, 678 (5th Cir. 1935), the court stated the rule as follows:

The United States attorney of the district where a violation of a federal statute occurs is charged with the duty of prosecution and vested with complete control over the proceedings, in the exercise of sound discretion. If the facts show a violation of two or more statutes, he may elect under which he will prosecute, in the absence of a prohibitory statute.

More recently, the constitutional validity of prosecutorial discretion in the choice of a statute upon which prosecution of an accused's misconduct would proceed was considered by the Court of Appeals for the District of Columbia in Hutcherson v. United States, 120 U.S.App.D.C. 274, 345 F.2d 964 (1965), cert. denied, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965). The court held that, as to an offense committed in the

District of Columbia, due process of law, which in a federal context includes equal protection, is not violated when the Government elects to prosecute under a Federal statute rather than an identical District of Columbia law, notwithstanding that the punishment prescribed by the latter is much less than that provided by the former. In part, the court said:[1]

> A defendant has no constitutional right to elect which of two applicable statutes shall be the basis of his indictment and prosecution. That choice is to be made by the United States Attorney.

In terms of the exercise of sovereign authority, the situation in *Hutcherson* is analogous to that present here. The Army regulation, which governs only those subject to its authority, is the equivalent of a penal statute of the District of Columbia, and, in each instance, promulgation of a provision covering the same subject matter of an existing statute of the United States does not supersede that statute. As *Hutcherson* indicates, the two provisions coexist and an individual subject to both can be prosecuted for violation of one or the other, not as he chooses, but as the government elects.[2]

In *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), the Supreme Court upheld a conviction under a felony statute providing for confinement for 5 years, notwithstanding the same conduct violated another statute, described as a misdemeanor, which proscribed the same conduct and provided for confinement not to exceed 1 year. When a member of the Court of Appeals for the District of Columbia Circuit, Chief Justice Burger commented on the significance of *Berra* as it affected the scope of prosecutorial discretion in the choice of statutes upon which to prosecute for particular misconduct. He perceived the majority opinion as rejecting the idea advanced in the dissent in *Berra* that it is incompatible with the system of justice guaranteed by the Constitution to allow the Government, when confronted with two " 'functionally equivalent' " statutes, to elect to prosecute upon the one that carries the more severe penalty. *Hutcherson v. United States, supra*, 345 F.2d at 969 (concurring opinion). In *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed. 446 (1962), the petitioner alleged denial of equal protection of the law in the imposition upon him of a life sentence under an habitual offender statute because, in a 15-year period, he was the only one of those subject to the statute as to whom the state prosecutors had invoked the statute. Rejecting the argument, the Supreme Court said:[3]

> [T]he conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation. Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification. Therefore grounds supporting a finding of a denial of equal protection were not alleged.

Aside from the prosecutor's utilization of a constitutionally unjustifiable standard, such as race or creed, "no court has any jurisdiction to inquire into or review his decision" as to whether, or on what basis, to prosecute an alleged crime. *Newman v. United States*, 127 U.S.App.D.C. 263, 382 F.2d 479, 482 (1967). As to the specific situation presented here, there is "no constitutional objection to giving the . . . [government] an option as to what crime . . . [it] will prosecute for a conviction where a given set of facts permits a

1. *Hutcherson v. United States*, 120 U.S.App.D.C. 274, 345 F.2d 964 (1965), *cert. denied*, 382 U.S. 894, 86 S.Ct. 188, 15 L.Ed.2d 151 (1965). *See also United States v. Jones*, 170 U.S.App.D.C. 362, 517 F.2d 176, 182–83 (1975).

2. It is important to note that as prosecution can be only for violation of one or the other of the applicable statutes, no question of double jeopardy by the same sovereign is involved. *See United States v. Shepard*, 169 U.S.App.D.C. 353, 515 F.2d 1324 (1975).

3. *Oyler v. Boles*, 368 U.S. 448, 456, 82 S.Ct. 501, 506, 7 L.Ed. 446 (1962). *See also Newman v. United States*, 127 U.S.App.D.C. 263, 382 F.2d 479, 481 (1967).

choice." *Minkin v. United States,* 383 F.2d 427, 428 (9th Cir. 1967). The American Bar Association has formulated certain guidelines for the exercise of the decision to charge, but it has conceded that by "its very nature the exercise of discretion cannot be reduced to a formula." ABA Standards, The Prosecution Function and the Defense Function 93 § 3.9 (Approved Draft 1971). On the record before us, the choice between charging the accused with a violation of the Army regulation or proceeding against him under Article 134, UCMJ, was, in my opinion, constitutionally valid.[4]

My second reason for disagreeing with the majority is that, in my opinion, the result it reaches is contrary to the concept and the letter of the Uniform Code. Earlier, for the purpose of meeting the majority's constitutional contention, I assumed that AR 600–50 was the equivalent of a punitive article of the UCMJ; actually, they are not the same. As this Court pointed out in *Walter,* a "regulation which merely enjoins conduct already imposed upon the individual by law is substantially an order to obey the law and, as such, has no effect on the 'limit [of punishment] of the ultimate offense committed.'" 20 U.S.C.M.A. at 371, 43 C.M.R. at 211.

The Uniform Code empowers the President to prescribe maximum limits of punishment for all military offenses except those as to which the article, itself, fixes the penalty. He has done so in the table of maximum punishments and other provisions of the Manual for Courts-Martial, United States, 1969 (Rev.). The Uniform Code has also invested competent court-martial authorities with discretionary powers over the disposition of criminal charges and the punishment for violations of the punitive provi-

sions of the Code that are so plenary and so expansive as to transcend the discretion allowed prosecutors in the civilian community. *See United States v. Kirsch,* 15 U.S.C.M.A. 84, 35 C.M.R. 56 (1964). For present purposes, suffice it to note that a competent court-martial authority can, in a number of different ways, lessen the punishment prescribed by the President for a particular offense. For example, except in a death case, by a stroke of the pen, the court-martial authority can affect the punishment to which the accused may be subject by referring the charge to a court-martial that has no statutory authority to impose a penalty of the magnitude authorized by the President. Thus, a charge such as housebreaking or grand larceny, for which the punishment provided by the President includes a dishonorable discharge and confinement at hard labor for 5 years, can be referred to a special court-martial for trial; because the special court-martial has power to impose only a bad-conduct discharge, not a dishonorable discharge, and confinement at hard labor not in excess of 6 months, the maximum punishment to which the accused is subject is materially less than that provided in the table of maximum punishments. In such instances, the result is achieved by affirmative action by the court-martial authority in a particular case. As *Walter* points out, a regulation prohibiting conduct already enjoined by the Uniform Code does not, itself, automatically reduce the penalty prescribed by the President for a specified offense. I agree with what the Court said on the subject in *Walter.*[5]

As we have seen, the punishment provision for violation of an order or regulation does not increase the penalty if the Table lists a lesser penalty for the same

---

**4.** It should be noted that the prosecutorial function in the military in regard to selection of charges against an accused, which is discussed in the text, is not the responsibility of the individual who represents the Government in the courtroom. Trial counsel presents the Government's case before the court-martial, but his authority does not include the power to determine whether charges should be referred to trial or which of the three courts-martial provided for by the Uniform Code should try the case. Those powers and others compre-

hended within the concept of prosecutorial discretion, as it is construed in the civilian community, are vested by the Uniform Code of Military Justice in authorities empowered to convene courts-martial. *See United States v. Kirsch,* 15 U.S.C.M.A. 84, 91–93, 35 C.M.R. 56, 63–65 (1964); *United States v. Hawthorne,* 7 U.S.C.M.A. 293, 22 C.M.R. 83 (1956).

**5.** 20 U.S.C.M.A. at 371, 43 C.M.R. at 211.

misconduct. Similarly, the mere existence of a general order or regulation cannot decrease the punishment expressly provided in the Table for the same misconduct. To illustrate, let us suppose a general order defining the conduct of trainees directs that they obey the orders of their commissioned officers. Willful disobedience of an order of an officer by a trainee would violate the order, but it also violates Article 90, Code, supra, 10 U.S.C. § 890, which is listed to the Table; if convicted of the latter offense, the accused is subject to the maximum punishment provided for Article 90, which includes confinement for five years, notwithstanding the existence of the general order and the two years confinement limit provided in the Table for violation thereof. Inapplicability of the penalty listed for an Article 92 offense in both situations results from the fact that, in the absence of special circumstances (see *United States v. Yunque-Burgos*, 3 U.S.C. M.A. 498, 13 C.M.R. 54 (1953); *United States v. Loos*, 4 U.S.C.M.A. 478, 16 C.M.R. 52 (1954)), an order or regulation which merely enjoins conduct already imposed upon the individual by law is substantially an order to obey the law and, as such, has no effect on the "limit [of punishment] of the ultimate offense committed." *United States v. Bratcher*, 18 U.S.C.M.A. 125, 128, 39 C.M.R. 125 (1969); see also *United States v. Renton.* Thus, all military accused violating the same statute are subject to the penalty listed in the Table for that offense, regardless of the accidental circumstance that a particular service or command has promulgated a general order or regulation proscribing the same conduct as the statute.

From the standpoint both of civilian and military law regarding the scope of prosecutorial discretion in the choice of a statute for the prosecution of particular misconduct by an accused and the relationship between a general order or regulation which enjoins conduct that is already proscribed by the Uniform Code and for which the President has provided a penalty, I perceive no violation of the Constitution or the Code in treating the accused's wrongful possession of marihuana as a violation of Article 134, rather than as a violation of AR 600–50 in contravention of Article 92. I would, therefore, affirm the decision of the United States Army Court of Military Review.