UNITED STATES

v.

Staff Sergeant Evans JACKSON, 255–74–8653, US Army, Company A, Headquarters Command, US Army Training Center and Fort Dix, Fort Dix, New Jersey.

CM 432738.

U. S. Army Court of Military Review.

Sentence Adjudged 3 Oct. 1974.

Decided 24 Sept. 1976.

Appellate Counsel for the Accused: CPT Anthony J. Siano, JAGC; CPT John M. Nolan, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Richard S. Kirby, JAGC; CPT Richard S. Kleager, JAGC; MAJ John T. Sherwood, Jr., JAGC; COL Thomas H. Davis, JAGC.

## OPINION OF THE COURT

COSTELLO, Judge:

Contrary to his pleas, the appellant was found guilty of one specification of wrongful possession of heroin and one specification of wrongful sale of heroin, both charged under Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The general court-martial with members sentenced appellant to confinement at hard labor for five years, a dishonorable discharge and other penalties.[1] The convening authority approved the sentence.

This Court affirmed the findings of guilty and the sentence, but on 14 August 1975, the appellant filed a petition for review with the United States Court of Military Appeals. The petition was granted on the issue before us now, and the Court directed that the case be consolidated for oral argument with another then on its docket, *United States v. Courtney.* The joint hearing was held on 23 February 1976. A decision in *Courtney* was rendered in an opinion dated 2 July 1976, 1 M.J. 438, but on the same day, the Court of Military Appeals issued an order vacating this Court's earlier decision herein and remanding the case to us for "further consideration in light of [its] decision in *United States v. Courtney* . . . ."

Our decision in this case will affect the nearly 300 cases which we have been ordered to hold in abeyance or have so held on our own motion pending the outcome of the *Courtney-Jackson* litigation. For this reason, the Court has chosen to decide this case sitting as a whole in accordance with Article 66(a) of the Code.

■ The issue in this case is: Was appellant, Jackson, deprived of equal protection of the laws by the manner in which he was charged? We hold that he was not. Our holding flows from an examination of the differences between *Courtney* and this case, from the federal cases concerning selective application of law, and from the absence of any right of an accused person to choose which of two lawful statutes shall be applied to him. *United States v. Culley,* 12 U.S.C.M.A. 704, 31 C.M.R. 290 (1962); *United States v. Mills,* 47 C.M.R. 95 (A.C.M.R. 1973); *United States v. Ross,* 47 C.M.R. 55 (A.C.M.R.1973) (En Banc).

Obviously, if *Courtney* stands for a rule which means, *inter alia,* that the punishment for every drug offense charged under Article 134 as a five or 10 year offense is limited to that possible for a two year offense under Article 92, we must take cura-

---

1. The appellant faced a ten maximum term of confinement as the result of the military judge having ruled the specifications multiplicious for sentencing purposes. *See* paragraph 127*c*, Manual for Courts-Martial, United States, 1969 (Revised edition) (MCM 1969 (Rev)).

tive action in this and every case like it. But if that were the result desired by the Court of Military Appeals, the Court would simply have ordered sentence reassessment, as it did in *Courtney.* The fact that vacation of our judgment and further proceedings were ordered suggests that our higher court desires us to exercise a power the two courts do not share, our fact-finding power.[2] It is clear from *Courtney* that some drug charges laid under Article 134 are sustainable, at least those which may result in a lighter sentence than that imposable under Article 92 and those brought under guidelines which cure the equal protection problem. There are also those categories of cases to which the Court referred in its note 9, i. e., those in which the petitioner failed to satisfy his burden of proof of discrimination after the prosecution offered a rational explanation of its conduct as to the charge. Finally, there are those cases in which "the difference in penalty consequences is generated" only by the accused's illegal act. 1 M.J. at 440.

We will summarize our findings of fact in the conclusion of this opinion. For the moment it is sufficient to note that we are proceeding entirely from the available record. Whereas the issues in *Courtney* were litigated at trial, we know of only one other in the nearly 300 related cases in which that is true.[3] Nonetheless, the issue stated above is before us by order and under circumstances which require decision. Among those circumstances is the place the *Courtney* decision must ultimately occupy in military law.

## II

*Courtney* has recognized the applicability to military practice of the emerging general right to have the law equally enforced. Specifically, that decision identified the individual right to be free from discriminatory application of the law. The foundation of this right is in the equal protection aspect of the due process clause of the Fifth Amendment, United States Constitution. *United States v. Steele,* 461 F.2d 1148 (9th Cir. 1972), *citing Two Guys from Harrison—Allentown, Inc. v. McGinley,* 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551 (1961); *Oyler v. Boles,* 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1961) and *Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). *See also United States v. Falk,* 479 F.2d 616 (7th Cir. 1973) [En Banc].

■ The general right to have the laws equally enforced does not encompass a right to have a criminal law enforced against all persons equally situated before it is applied to a petitioner. *Oyler v. Boles, supra,* 368 U.S. at 456, 82 S.Ct. 501. However, the emerging individual right protects against deliberate choices by officials to apply a law if their choices are based on unjustifiable or arbitrary classifications. *Oyler, supra; Mackay Tel. and Cable Co. v. City of Little Rock,* 250 U.S. 94, 39 S.Ct. 428, 63 L.Ed. 863 (1919); *Haley v. Troy,* 338 F.Supp. 794 (D.Mass.1972). Objectionable classifications include not only those based on race or creed, but also *any grouping of specific persons arbitrarily chosen. Oyler, supra; Snowden v. Hughes,* 321 U.S. 1, 7, 8, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *United States v. Crowthers,* 456 F.2d 1074 (4th Cir. 1972). The group from which one "discriminatee" is identified may be as small as two cofelons. *Cf. Commonwealth v. Lewis,* 443 Pa. 305, 279 A.2d 26 (1971).[4]

The subject in these selective application cases is the individual conduct of some government officials, usually police or pros-

---

**2.** This view is consistent with the practice of the Supreme Court which reverses and remands when "not certain" that outright reversal is demanded. *Henry v. City of Rock Hill,* 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed.2d 79 (1964).

**3.** That case is *United States v. Briggs,* No. 433286, in which CPT Blackburn made motions at trial like those in *Courtney.*

**4.** The Court acknowledges the helpful scholarship in Weissman, "The Discriminatory Application of Penal Laws by State Judicial and Quasi-Judicial Officers," 69 Nw.U.L.Rev. 489 (1975).

ecutors. The statutes and ordinances they [mis]apply are not under attack, but the method of use, the "selective application" of those laws, is attacked.[5] Because these cases flow from older class discrimination cases, e. g. *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886), and because the petitioner's effort usually is to modify official behavior, the cases have a definite flavor of actions in equity. Injunctive relief is a common remedy. *See Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1969).

In a similar spirit, unique appellate relief was fashioned by the Court of Military Appeals in *Courtney* and the orders which followed it. By both vacation and remand of our decisions and by informal agreement the proceedings in some 300 cases were abated pending the outcome of *Courtney* and its companions.[6] By reason of that accumulation in a non-final posture, some or all of those cases may benefit. *See United States v. Flint*, 50 C.M.R. 865, 870 (A.C. M.R.1975), affm'd, 24 U.S.C.M.A. 270, 51 C.M.R. 722, 1 M.J. 428 (1976).

Whether that action be called "legal" or "equitable" is not important. What is significant from this extraordinary action is that the error raised in only one case has been recognized as possibly extant in all those of its class. The "class" here consists of those charged with drug offenses under Article 134, UCMJ, in circumstances which would also permit charges under Article 92, UCMJ, and imposition of lighter penalties.[7] *Courtney* decided that members of that class were deprived of equal protection of the laws when the choice to proceed against them was arbitrarily made. The circumstances of the *Courtney* trial and anteced-

ent conditions in the jurisdiction where Courtney was tried made a record from which the possibility of arbitrary choice was manifest—at least to the extent that the choices went undefended.[8]

That is, however, the extent of the rule in *Courtney*. It defines an error, consideration of which at this level has been assured by the Court of Military Appeals. That error existed for Courtney himself and probably for those whose cases were similar to his in his jurisdiction. But we are concerned here with appellant, Jackson.

Persons in other general court-martial jurisdictions of the Army are not automatically in the same class with Courtney. Although similarly charged and possibly within the terms of the *Courtney* rule, the official choices made in their cases were made by other, independent officials in a variety of times, places and circumstances potentially of material difference. The independent official referred to is, of course, the convening authority and the "choice" made is his decision to refer charges to trial in a particular way. That choice is personal to him, *United States v. Roberts*, 7 U.S.C.M.A. 322, 22 C.M.R. 112 (1956), as are many other judicial functions. Additionally, it is the general court-martial convening authority whose action completes a case at the trial level and who forwards the record directly to the appropriate Judge Advocate General for review. Article 65, UCMJ. In this function, the typical general court-martial convening authority corresponding directly with Headquarters, Department of Army, skips over one or more intervening echelons of command to whom he is militarily responsible. This phenomenon, plus all the other powers vested in him by the Code (e.

---

5. *See Wade v. City and County of San Francisco*, 82 Cal.App.2d 337, 186 P.2d 181, 183 (1947); *City of Covington v. Gausepohl*, 250 Ky. 323, 62 S.W.2d 1040 (1933).

6. The general power of courts to stay proceedings as an incident of power over their own dockets is set out in *Landis v. North American Co.*, 299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936). *See also Ewing v. Mytinger and Casselberry*, 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950).

7. It is further limited to those cases not "final" before *Courtney* was decided.

8. The emphasis here on the choices made, rather than on the statute as constitutional or not is justified by the logic or the history of this and related cases. It is also suggested strongly by the fact that in all the cases relied on in the Dissenting Opinion, the statutes involved were stricken as unconstitutional. Clearly, we have no such problem here.

g. supervisory review of inferior courts-martial) combine to create within the Army some 70 separate, independent jurisdictions in which the administration of justice is conducted under law, but in which it may also vary in response to local conditions, personnel or unique military requirements.

 This view of the military organization for the administration of criminal justice is consistent with the view taken by federal and state courts in many of their class discrimination cases. County or municipal officials, though certainly functionaries of a state, are the ones "having immediate responsibility" and are the ones to whom orders and restraints are customarily directed. *See Dombrowski, supra,* 380 U.S. at 497, 85 S.Ct. 1116; *Wade, supra; Gausepohl, supra.* Accordingly, we hold that the rule of *Courtney* applies to all jurisdictions within the Army, but that the type of error condemned in that case must be established individually as to the authorities responsible in each jurisdiction before relief may be granted.

A convening authority may lawfully choose an Article 18 (general) court rather than an Article 19 (special) court, where the difference in punishment potential may be from six months to life imprisonment. He may also rationally choose to charge a 10 year offense rather than a two year offense under two other articles of the same Code, and refer only one of them to the court of his choice, as on the facts above.

 The essential distinction has been neatly drawn by the courts of the State of Washington. The entitlement to equal protection of the laws is to be emphasized where the guilt-determining process is involved; but where the issue is a sentence, the goal is individual treatment of individual offenders. *State v. Blanchey,* 75 Wash.2d 926, 454 P.2d 841, 850 (1969). *See United States v. Mosely,* 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976). Consequently, the possibility of varying sentences for the same felony is not alone a denial of equal protection. *Jansen v. Morris,* 87 Wash.2d 258, 551 P.2d 743, 745 (1976). Speaking directly to a statute which made disparate sentences for the same act (jail break) quite likely, the Supreme Court of the United States upheld the act and its outcomes, saying:

> "For the determination of sentences, justice generally requires consideration of more than the particular acts by which the crime was committed and that there be taken into account the circumstances of the offense together with the character and propensities of the offender." *Pennsylvania v. Ashe,* 302 U.S. 51, 55, 58 S.Ct. 59, 61, 82 L.Ed. 43 (1937).

Earlier proceedings in this case have not pointedly described and catalogued the conduct of local officials "having immediate responsibility" for actions taken, as in *Dombrowski.* Similarly, we do not have in these proceedings any inquiry specifically dedicated to the matters found pivotal by the Supreme Court in *Ashe.* In any event, the Court of Military Appeals has directed reconsideration of this case and related ones "in the light of" *Courtney.* We find that most of these cases have been too long in the appellate process to permit facile, timely rehearings on the *Courtney* issues.

Accordingly, we proceed directly to obey the mandate, applying the principles in the selective application cases above. Although the amount of heroin involved in the offenses charged is small, much more information about appellant than merely the circumstances of that one transaction was properly before the convening authority. At the time of his decision to refer the case to trial under Article 134, the convening authority knew that appellant was an active dealer in a variety of controlled substances, including heroin; that a joint civilian-military police raid at appellant's off-post apartment disclosed his possession of a variety of such substances and of over $11,000.00 in cash; and he knew that state authorities had set appellant's bail at $100,000.00 after that raid.[9]

---

9. The instant offenses had been committed on-post before that raid, downtown.

Thus, appellant was a person reasonably subject to severe penalties. That he was not arbitrarily subjected to penalties more severe than other persons similarly situated is demonstrated by the records of our Clerk of Court for 1975. They indicate that *all* drug offenses referred to trial by general court-martial or bad-conduct discharge special court-martial at Fort Dix were charged under Article 134. That condition distinguishes an important aspect of this case from that of Courtney's, who was unaccountably charged with a marihuana offense more severely than other offenders in his jurisdiction. We have considered the case "in the light of *Courtney*" and find no support for appellant's assertion of error; we also find that the difference in penalty consequences appellant faced flowed from the nature and quality of his offenses rather than from any improper act of any government agent. Thus, there was no error as defined in *Courtney*.

Accordingly, the findings of guilty and the sentence are affirmed.

Chief Judge CLAUSEN, Senior Judges CARNE and CLAUSE, and Judges DONAHUE, FULTON, MITCHELL and MOUNTS concur.

O'DONNELL, Judge, with whom Judges COOK, DeFORD, DRIBBEN and FELDER join, dissenting:

I disagree with the majority's conclusion that *United States v. Courtney*, 1 M.J. 438 (July 2, 1976), stands for the proposition that the appellant was required to establish discrimination. I believe that *Courtney* should be given a broader interpretation for reasons which I will develop. As our primary responsibility is to interpret *Courtney* and apply its principles to the facts of this case, a close examination of that decision is indicated. Contrary to his pleas, Courtney was convicted by a general court-martial of wrongful possession of marihuana in viola-

tion of Article 134. He had originally been charged under Article 92 for possessing the marihuana contrary to Army Regulation 600–50. The accuser, however, amended the charge before trial at the suggestion of battalion officials to allege a violation of Article 134. At trial, Courtney's defense counsel, alleging a denial of equal protection under the Fifth Amendment, moved for a ruling by the judge that the maximum confinement was limited to that authorized for a violation of Article 92 (two years) rather than that authorized for an Article 134 violation (five years). In support of the motion, the defense introduced evidence showing that the overwhelming majority of the drug cases in that command were prosecuted under Article 92. The defense also called the accuser to explain his decision to proceed under Article 134. The judge denied the motion. Courtney was convicted and given a sentence which included confinement in excess of two years. The Court of Military Appeals concluded that Courtney had been denied equal protection and held that the judge erroneously denied the motion to limit the punishment to that authorized for an Article 92 violation.

The Supreme Court has never directly spoken to the issue now before us. The closest case is *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), a decision relied on heavily by the dissent in *Courtney*. In that case, the accused was convicted under a statute which authorized confinement for five years, although his conduct also violated another statute which carried only a one-year maximum. As noted in *Courtney*, however, the majority in *Berra* declined to answer the equal protection question because it had not been raised below and because, as seen by the majority, the issue did not rise to plain error.[1]

The dissenting judges in *Berra* would have invoked plain error and addressed the substantive issue. To them, there was a denial of equal protection when the Govern-

---

1. The issue was likewise not raised by the appellant at trial in this case. But this presents no barrier to relief. Errors affecting determination of the maximum authorized punishment may be raised for the first time on appeal in the military. *See United States v. Harden*, 24 U.S. C.M.A. 76, 51 C.M.R. 249, 1 M.J. 258 (1976). *See also United States v. Warren*, 49 C.M.R. 396 (A.C.M.R.1974) (concurring opinion).

ment was free to choose a harsher statute over a more lenient one for the same misconduct without adequate standards. As Justice Black noted:

"A basic principle of our criminal law is that the Government only prosecutes people for crimes under statutes passed by Congress which fairly and clearly define the conduct made criminal and the punishment which can be administered. This basic principle is flouted if either of these statutes can be selected as the controlling law at the whim of the prosecuting attorney or the attorney general." (*Berra v. United States*, 351 U.S. at 139, 76 S.Ct. at 691).

This, I believe is the underlying principle relied on by the Court of Military Appeals in arriving at its decision in *Courtney*.

The Government in the instant case contends that *Courtney* should be limited to its facts, *i. e.*, the accused must raise the issue at trial and must bear the burden of proving that he was denied equal protection. The appellant, in turn, contends essentially that *Courtney* is to be interpreted broadly and that an accused who has been punished for a drug offense under the more stringent limits of Article 134 need not demonstrate discrimination.[2] The majority appears to have adopted the argument of the Government with respect to burden of proof.

The issue of burden of proof, however, is not as simple of resolution as a reading of the majority opinion would appear to indicate. The question of which party bears this burden in the equal protection area is governed by the nature of the contested statute. If the statute is discriminatory on its face, an accused does not have to demonstrate discrimination—the discrimination can be found in the statute itself. *See*

*Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964); *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) for examples of cases involving statutes discriminatory on their face. If the statute is not discriminatory on its face, a person claiming a denial of equal protection must show that he was unlawfully discriminated against as the statute was applied to him. *See* e. g., *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973).

*Courtney* falls into neither category. The Court in that case was faced, as we are here, with two statutes (Article 92 and Article 134) providing for different punishment for "virtually identical conduct." These two statutes, taken together, are what might be denominated potentially discriminatory on their face because of the absence of standards or guidelines as to their application in particular cases. It was because of this absence of standards that the Court in *Courtney* found the denial of equal protection. In the words of Chief Judge Fletcher:

"While equal protection decisions more frequently focus upon the effect of enunciated statutory guidance which highlights a difference in treatment among various classes of individuals, here it is the utter lack of such guidance coupled with the existence of two statutes which because of the table of maximum penalties punish virtually identical conduct in different ways that violates the Fifth Amendment. Neither Government counsel at trial nor on this appeal has suggest-

2. Both the Government and the defense contend that the language of the order issued by the Court of Military Appeals in this case supports its theory. The Government argues that the failure of the Court to order corrective action with respect to the sentence in this case despite the duration of the approved confinement is evidence that *Courtney* was not intended for broad application. The defense asserts that under the mandate to reconsider "in light . . . of *Courtney*", we have no alternative

but to hold that Jackson was denied equal protection. Judicial review, however, is not that mechanical. Our role is to interpret *Courtney* and decide *Jackson* and not to indulge in a search for cryptic clues in the order returning the case to us for that purpose. *Compare Doughty v. Maxwell*, 372 U.S. 781, 83 S.Ct. 1106, 10 L.Ed.2d 139 (1963) *with Doughty v. Sacks*, 175 Ohio St. 46, 191 N.E.2d 727 (1963) *and Doughty v. Maxwell*, 376 U.S. 202, 84 S.Ct. 702, 11 L.Ed.2d 650 (1964).

ed what, if any, standard is utilized in determining whether to charge an offense under Article 134 as opposed to Article 92 where the misconduct is violative of both provisions of the Uniform Code." (*United States v. Courtney*, 1 M.J. at 441; footnote omitted).

Viewed in this light, *Courtney* cannot be read as requiring an accused to establish discrimination. The Government is required to demonstrate that it applied rational standards in prosecuting an accused under the article authorizing greater punishment.[3] If the Government fails to do so, *Courtney* applies and the accused is entitled to relief if it is determined that he received a greater punishment under Article 134 than he would have received had he been prosecuted under Article 92.

As the Government has not demonstrated that it followed any standards in deciding to prosecute the appellant for a violation of Article 134 and as the appellant clearly has standing, the principles announced in *Courtney* are equally applicable to the instant case, provided *Courtney* has retroactive application. That question has already been answered for our purposes in this case, as the Court of Military Appeals has directed us to consider *Jackson* "in light of . . *Courtney*." However, it is appropriate, I believe, to determine how *Courtney* is to be applied to other cases.

The Constitution neither requires nor prohibits retrospective effect of new constitutional interpretations. *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Moreover, retroactivity is not contingent on the article of the Constitution involved, but instead upon the new rule in each case. *Johnson v. New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). Whether or not such a holding should be limited to prospective application can be determined by weighing various factors: the purpose of the new rule, the reliance by the Government upon past deci-

sions, and the effect of retroactive application upon the administration of justice. *Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); *Johnson v. New Jersey, supra.*

It has been said that the purpose of the new rule is the foremost of these factors. *Desist v. United States*, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969). Thus new exclusionary rules, the purpose of which is to deter future illegal police conduct, have been given prospective application only. *Desist v. United States; Stovall v. Denno, both supra.* On the other hand, retrospective relief has been held to be appropriate in earlier cases falling under new pronouncements concerning the right to counsel at trial. *Berry v. Cincinnati*, 414 U.S. 29, 94 S.Ct. 193, 38 L.Ed.2d 187 (1973); *Pickelsimer v. Wainwright*, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963). Equality in treatment of all military accused is clearly the purpose designed to be achieved by the *Courtney* pronouncement. Therefore, this criterion suggests a retrospective dispensation of relief.

As to the second and third criteria, the Government clearly acted reasonably and in good faith in charging the appellant and others in reliance on the prior military case law. *See United States v. Walter*, 20 U.S. C.M.A. 367, 43 C.M.R. 207 (1971); *United States v. Ross*, 47 C.M.R. 55 (A.C.M.R.1973). In addition, an imparting of total retroactivity to *Courtney* would have a massive impact on the administration of justice within our sphere. The cases affected would necessarily be legion. In many guilty pleas a rehearing would have to be required. *See United States v. Harden*, 24 U.S.C.M.A. 76, 51 C.M.R. 249, 1 M.J. 258 (1976). This Court and the prosecutorial agencies below would likely be taxed beyond their present capabilities. Processing of current trials and appeals would undoubtedly be delayed. In such situations,

---

**3.** The Air Force Court of Military Review has adopted a slightly different approach. In *United States v. Bender*, 1 M.J. 900 (A.F.C.M.R. , 21 July 1976), a panel of that Court interpreted *Courtney* to require the standards to be set forth in the statute. I do not believe *Courtney* should be interpreted so strictly. That is to say sustainable guidelines may appropriately be promulgated by a lesser authority than Congress itself.

the implications on the administration of justice may become preeminent considerations to a decision concerning a cut-off date for retrospective relief. *See Johnson v. New Jersey, supra; Mercer v. Dillon*, 19 U.S.C.M.A. 264, 41 C.M.R. 264 (1970).

In *Mercer*, the Court of Military Appeals concluded that retroactive application of the Supreme Court's decision in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), could potentially disturb thousands of convictions dating back as far as 1916. Because of the likely disruption to the orderly administration of justice of such a holding, the Court declined to give *O'Callahan* total retrospective effect despite the nature and purpose of the new rule announced therein. It did, however, hold *O'Callahan* applicable to all cases then under review.

I am satisfied that application of *Courtney* to cases still under appellate review would not be unduly disruptive to our system. Therefore, I would hold that the *Courtney* principles are available to those accused whose cases are pending appellate review but not to any accused whose convictions were final on or before the date of that decision, 2 July 1976.[4]

Applying *Courtney* principles to the instant case, I would reassess the sentence.

The appellant received a sentence vastly in excess of the maximum permitted for violations of Article 92. Under the circumstances prejudice is patent.

JONES, Senior Judge, dissenting:

I am constrained to join with Judge O'Donnell because I believe the United States Court of Military Appeals in *United States v. Courtney*, 1 M.J. 438 (July 2, 1976), established a rule to the effect that in a trial by general court-martial for a drug offense the existence of two statutes (Articles 92 and 134, UCMJ) which permit punishment of the same conduct with different maximum periods of confinement, gives rise to a presumption of arbitrariness in the exercise of the choice between those statutes; and such presumptively arbitrary action is a denial of equal protection. The *Courtney* decision, however, would permit the Government to rebut the presumption by a proper showing that appropriate standards were used in choosing between Article 134 and Article 92.

I also believe the Court of Military Appeals has, by the use of a cryptic remand order and by denial of the Government's request for reconsideration, foreclosed further review of the issues of burden of proof, waiver and retroactivity.[1] *Courtney* is not

---

4. For a discussion of when finality attaches within the meaning of Article 76 of the Code, see *Hendrix v. Warden*, 23 U.S.C.M.A. 227, 49 C.M.R. 146 (1974), and *United States v. Draughon*, 42 C.M.R. 447 (A.C.M.R.1970).

1. To the extent Judge O'Donnell purports to make a determination of the questions of burden of proof, waiver and retroactivity, I must disagree. I do not believe we have been given that discretion. However, so that my position will be clear, I note my disagreement with the conclusions he draws as to those questions.

First, I do not believe *McLaughlin v. Florida*, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964), and *Skinner v. Oklahoma*, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), lend support to the proposition that the Government has the burden of proving that one of two valid, non-discriminatory statutes (Articles 134 and 92) was not arbitrarily chosen for prosecution purposes. Those cases are such special categories that they cannot be used to generalize a rule for broad application. *Skinner* involved sterilization as punishment for habitual offend-

ers and *McLaughlin* involved classification based on race. This case, involving nothing of an especially repugnant nature should fall within the general category wherein the accused has the burden of proving discrimination in treatment. *See Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *United States v. Berrigan*, 482 F.2d 171 (3d Cir. 1973).

Second, as to the question of waiver, the Supreme Court of the United States declined to address the precise question in *Berra v. United States*, 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956), because it had not been raised below. I believe such restraint is significant here. This is not the type of case in which the military judge has an affirmative duty to intercede to insure that the trial is "conducted in accordance with sound legal principles" as in *United States v. Heflin*, 23 U.S.C.M.A. 505, 50 C.M.R. 644, 1 M.J. 131 (1975), but rather is a case under the passive waiver concept wherein "actions of trial defense counsel . . .

a *per se* rule but our discretion is extremely limited. *See Henry v. City of Rock Hill,* 376 U.S. 776, 84 S.Ct. 1042, 12 L.Ed.2d 79 (1964). We are permitted only to determine whether the Government has shown that standards were used in choosing between Articles 134 and 92. If we find no showing that standards were used, the presumption of arbitrariness is unrebutted. Our next task would then be to determine whether the appellant was prejudiced thereby.[2]

In searching the record for standards, I can find no showing by the Government that any were used in choosing between Articles 134 and 92 for charging the appellant. I do not agree with the majority that a post-trial finding by this Court that all drug offenses at Fort Dix were charged under Article 134 or a recitation of facts sufficient to justify the choice of the more severe article equates to a showing that appropriate standards were employed. Accordingly, I would proceed to the second step of our review of the case which is the determination of prejudice.

I agree with Judge O'Donnell in determining that prejudice exists and that the sentence should be reassessed.

leave appellate tribunals with insufficient factual development of an issue necessary to resolve a question of law raised on appeal. . ." *United States v. Graves,* 23 U.S.C.M.A. 434, 437, 50 C.M.R. 393, 396, 1 M.J. 50, 53 (1975). Finding no manifest miscarriage of justice, I would impose waiver on this appellant for his failure to raise the issue below.

Finally, as to the question of retroactivity, had we the discretion to make that determination here, I would find the rule in *Courtney* to be completely prospective. First, as Judge O'Donnell points out, the Government acted reasonably and in good faith in relying on the prior case law in charging the appellant. Second, and partially contrary to Judge O'Donnell's position, I believe the administrative burden from rehearings in the guilty plea cases would be so great as to weigh against even limited retroactivity. Third, I find the purpose of the rule in *Courtney,* the equalization of the maximum confinement imposable, to be of relatively less significance than the purpose of the rules in which retroactivity has been granted by the Supreme Court, *e. g.,* right to counsel at trial (*Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)), made retroactive by *Pickelsimer v. Wainwright,* 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41, (1963); reasonable doubt standard in juvenile proceedings (*In re*

*Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970)), made retroactive by *Ivan V. v. City of New York,* 407 U.S. 203, 92 S.Ct. 1951, 32 L.Ed.2d 659 (1972); double jeopardy rule binding on the states (*Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969)), made retroactive by *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

The purpose behind the *Courtney* rule is of the same magnitude as other rules which were not made retroactive, *e. g.,* the right to a jury trial made applicable to the states (*Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)), not retroactive per *DeStefano v. Woods,* 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968); systematic exclusion of females from juries violates Sixth Amendment (*Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975)), not retroactive per *Daniel v. Louisiana,* 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975).

2. As the underlying error is one of constitutional dimensions (denial of equal protection), the lack of prejudice must appear beyond a reasonable doubt. *United States v. Moore,* 24 U.S.C. M.A. 217, 51 C.M.R. 514, 1 M.J. 390 (1976).