## UNITED STATES

v.

**Sergeant Eddie CAMPBELL, Jr., FR 142–48–8751, 803rd Civil Engineering Squadron, United States Air Force Academy.**

**ACM 22092.**

U. S. Air Force Court of Military Review.

Sentence Adjudged 25 March 1976.

Decided 19 October 1976.

Appellate Counsel for the Accused: Colonel Jerry E. Conner, Colonel Robert W. Norris and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

### DECISION

EARLY, Senior Judge:

Tried by general court-martial, the accused was convicted, despite his pleas, of two specifications of transferring heroin and one specification of using heroin, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The approved sentence extends to a bad conduct discharge and reduction to airman basic.

Appellate defense counsel invite our attention to the errors assigned in the accused's request for appellate representation and to the clemency recommendations attached to the post-trial review. Except for the assignment discussed below, we consider these matters to be without merit.

Here, as at trial, the accused argues that the Charge should be dismissed for lack of jurisdiction in that the offense occurred off-base during off-duty hours. We disagree.

The operative facts are uncomplicated. An airman-turned-informer named the accused, among others, as being part of the "drug scene" at Davis-Monthan Air Force Base. Subsequently, the informer, who had previously bought drugs from the accused, called the accused at his off-base apartment and arranged to purchase heroin. Thereafter, accompanied by an undercover agent of the Air Force Office of Special Investigations, the informer went to the accused's apartment where each paid him ten dollars

for a quantity of heroin. Before leaving the apartment, they observed the accused inject himself with a substance which the informer, himself an addict, described as causing the normal after effects of a heroin injection.

At the time of the transfer and use, the accused was about to depart for work on the base. Moreover, the accused knew the informer to be an airman from the base, and the agent was introduced as an airman on temporary duty from another base.

Prior decisions of the United States Court of Military Appeals have upheld the exercise of military jurisdiction over offenses involving the use of drugs and the transfer or sale of drugs to other servicemen, whether committed on or off-base. *United States v. Beeker*, 18 U.S.C.M.A. 563, 40 C.M.R. 275 (1969); *United States v. Castro*, 18 U.S.C.M.A. 598, 40 C.M.R. 310 (1969); *Rainville v. Lee*, 22 U.S.C.M.A. 464, 47 C.M.R. 554 (1973); *United States v. Sexton*, 23 U.S.C.M.A. 101, 48 C.M.R. 662 (1974). However, in recent decisions, the Court has cast doubt upon the validity of these precedents and has mandated a "different approach in resolving drug offense jurisdiction questions." *United States v. McCarthy*, 2 M.J. 26 (24 September 1976); *United States v. Tucker*, 1 M.J. 463 (3 September 1976); *United States v. Hedlund*, 2 M.J. 11 (17 September 1976). As indicated by Chief Judge Fletcher in *McCarthy*, supra:

> [Service connection issues require] careful balancing of the *Relford*[1] factors to determine "whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

We agree that the *Relford* criteria should be utilized in determining whether the military may properly exercise its jurisdiction over offenses committed off-base. The difficulty arises in applying these criteria to the circumstances of a particular case. Thus, for example, it might reasonably be argued that offenses such as those in issue are always "service connected" since they inherently involve a "flouting of military authority" and a "threat to the military post." See *Relford*, supra, 401 U.S. at 365, 91 S.Ct. 649; *United States v. McCarthy*, supra. Similar considerations based upon the *Relford* criteria were obviously utilized by the Court in determining the "service connection" issues in *Beeker, Castro, Rainville* and *Sexton*, all supra.

In *McCarthy*, supra, Chief Judge Fletcher commented that the military status of the recipient of contraband was "insufficient, in and of itself, to establish service connection." However, this comment appears at odds with the view clearly expressed by the Supreme Court in *Schlesinger v. Councilman*, supra. There, the Supreme Court recognized that the issue of "service connection" turns

> in major part on gauging the impact of an offense on military discipline and effectiveness, on determining whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and on whether the distinct military interest can be vindicated adequately in civilian courts. . . . [These] are matters as to which the expertise of military courts is singularly relevant, and their judgments indispensable to inform any eventual review in Art. III courts.

420 U.S. at 760, 95 S.Ct. at 1314. The Court added, in footnote 34:

> Although we do not address factual issues in this opinion, we note . . . the Solicitor General's statement that "drug abuse is a far more serious problem in the military context than in civilian life." . . . The seriousness of the problem is indicated by information presented before some congressional committees to the effect that some 86,000 servicemen underwent some type of rehabilitation for drug abuse in fiscal years 1972 and

---

1. *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971). The Supreme Court therein listed 12 criteria by which "service connection" may be measured.

1973, and only 52% of these were able to return to duty after rehabilitation. . . . It is not surprising, in view of the nature and magnitude of the problem, that in *United States v. Beeker*, 18 U.S.C.M.A. 563, 565, 40 C.M.R. 275, 277 (1969),[2] the Court of Military Appeals found that "use of marihuana and narcotics by military persons on or off a military base has special military significance" in light of the "disastrous effects" of these substances "on the health, morale and fitness for duty of persons in the armed forces."[3]

Applying the *Relford* criteria to the instant case, we are satisfied that the military properly exercised its jurisdiction over both offenses in question. It is clear beyond cavil that the use of a drug so contemporaneous to performance of military duty is deleterious to the morale, discipline, and health of military personnel and seriously affects the integrity of the base, itself, as well as the military operation and mission.

*Relford*, supra, 401 U.S. at 367, 91 S.Ct. 649.[4]

Similarly, the transfer of heroin to persons known or believed by the accused to be servicemen clearly represents a flouting of military authority and a threat to the military installation.[5] This is a matter in which the military interest is obviously greater and distinct from the civilian interest and one where the distinct military interest cannot be adequately vindicated in civilian courts. *Schlesinger v. Councilman*, supra. Whatever might have been the ultimate result had the accused been tried in civilian courts, the military interest in eradicating transfers of drugs between servicemen is far different from the civilian interest in controlling the drug problems in society. It is obvious that the ability of the civilian community to tolerate drug abuse is considerably different from the military. Indeed, with the possible exception of police and firemen, there is no exact counterpart to the requirement that servicemen be physi-

---

2. Despite the clear indication of the Supreme Court's agreement with the test utilized in *Beeker*, supra, to demonstrate service-connection, the majority opinion in *McCarthy*, supra, concludes with the caveat: "To the extent [*Beeker*] . . . suggests a different approach in resolving drug offense jurisdictional questions, it no longer should be considered a viable precedent of this Court."

3. The note concluded: "We express no opinion whether the offense with which the respondent in this case was charged is in fact service-connected. But we have no doubt that military tribunals *do* have both experience and expertise that qualify them to determine the facts and to evaluate their relevance to military discipline, morale, and fitness." 420 U.S. 760, 761, n. 34, 95 S.Ct. 1315.

4. See *Committee for GI Rights v. Callaway*, 171 U.S.App.D.C. 73, 83, 518 F.2d 466, 476 (1975):
   The increased incidence of drug abuse in the Armed Forces poses a substantial threat to the readiness and efficiency of our military forces. Unlike the civilian population, the military forces are charged with the responsibility of continuously protecting the nation's interests both on the domestic and international level. Widespread use of marijuana, hashish and other drugs can have a serious debilitating effect on the ability of the Armed Services to perform their mission. As noted in the extensive evidence submitted by the appellants, drug use among GIs in the USAR-

EUR has (a) lessened the on-the-job efficiency of GIs; (b) significantly reduced the number of effective soldiers in the European Command; (c) required the expenditure of enormous amounts of supervisory time to monitor all aspects of the drug control and rehabilitation process; (d) strained the limited medical resources of the European Command; (e) created a significant health threat; and (f) resulted in an increased incidence of crime.

5. See *Peterson v. Goodwin*, 512 F.2d 479, 480 (5th Cir. 1975):
   Heroin addiction among the servicemen at an Air Force base poses a unique threat to the operation of the base. Unless the airmen can respond quickly to orders and can adequately operate the complicated weapons and material subject to their use, the base will be unable to fulfill its vital functions in the defense of our Nation. . . . Heroin addiction presents a serious threat to the good order and discipline of our armed forces. A court-martial has power to deal with the threat. We hold that the sale of heroin by one airman to another is sufficiently related to the functioning of the armed forces for a court-martial to acquire jurisdiction over the offense and the offenders, notwithstanding the attenuating circumstances that at the time of sale both airmen were off base, off duty, and out of uniform.

cally capable of responding at any time to a recall to duty. This peculiarity of the offense in relation to the military way of life is, in our opinion, the very nature of the "service connection" alluded to in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and defined in *Relford*, supra.

Since, in our opinion, the use of heroin by a military man and the transfer of heroin by a military man to two other military men are "service connected" offenses, we find the exercise of jurisdiction by the military court here to be appropriate. *Gosa v. Mayden*, 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).

The findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.