UNITED STATES

v.

**Airman First Class Mikeal E. TINLEY, FR 551–04–9226, 4392d Transportation Squadron, 1st Strategic Aerospace Division (SAC).**

ACM 22106.

U. S. Air Force Court of Military Review.

Sentence Adjudged 20 May 1976.

Decided 4 Nov. 1976.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Major Bruce R. Houston.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Major Alvin E. Schlechter.

Before LeTARTE, C. J., EARLY, Senior Judge, and FORAY, J.

DECISION

EARLY, Senior Judge:

Tried by general court-martial, military judge alone, the accused was convicted, pur-

suant to his pleas, of transferring, possessing and using heroin, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934. The adjudged sentence extended to a bad conduct discharge, confinement at hard labor, for 24 months, forfeiture of all pay and allowances and reduction to airman basic. The convening authority reduced the period of confinement to 12 months and otherwise approved the sentence.[1]

Appellate defense counsel assign two errors. In the first they assert:

THE ACCUSED'S PLEAS OF GUILTY WERE IMPROVIDENT DUE TO THE ERRONEOUS ADVICE AS TO THE MAXIMUM PUNISHMENT.

During the inquiry into the providency of the accused's plea conducted in accord with the mandate of *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), all the parties at trial agreed that the maximum punishment included 40 years confinement at hard labor. Subsequent to trial, the Court of Military Appeals in *United States v. Courtney*, 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976), held that in drug offenses where there is a regulation prohibiting the same conduct which could have been charged under Article 92, the maximum sentence imposable is limited to that under Article 92 rather than that under Article 134. Later, in *United States v. Graves* [order] (6 Aug. 1976), where the accused pleaded guilty to six drug offenses charged under Article 134 and was advised that the maximum sentence to confinement was 60 years, rather than 12 years had the offense been charged under Article 92, the Court remanded the record for further consideration in light of *Courtney, supra*, and *United States v. Harden*, 24 U.S.C.M.A. 76, 51 C.M.R. 249, 1 M.J. 258 (1976). In *Harden*, the Court held the accused's guilty plea improvident where the trial participants and the convening authority erroneously considered the maximum penalty to be 20 years confinement at hard labor whereas, because of multiplicity, it should have been considered 10 years. On the

basis of these decisions appellate defense counsel ask us to set aside the findings and sentence and order a rehearing.

However, as we have held in *United States v. De La Fuente*, 2 M.J. 668 (A.F. C.M.R. 16 Sept. 1976), "in view of the accused's undeniable guilt and the lenient sentence imposed, we perceive no possibility of prejudice." Further, as cited in *De La Fuente*, the language in *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970) is particularly apposite to this fact situation. Therein the Supreme Court held:

[A]bsent misrepresentation or other impermissible conduct by state agents . . . a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts, as in this case, hold that the maximum penalty for the crime in question was less than was reasonably assumed at the time the plea was entered. . . . We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions.

397 U.S. at 756–7, 90 S.Ct. at 1473–1474; see also *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *United States v. Dusenberry*, 23 U.S.C.M.A. 287, 49 C.M.R. 536 (1975); *United States v. Bosco*, 2 M.J. 658 (A.F.C.M.R. 27 Aug.

---

1. The convening authority directed that the accused be confined in the Rehabilitation Division, 3320th Correction and Rehabilitation Division, Lowry Air Force Base, Colorado.

1976); *United States v. Smith*, 2 M.J. 681 (A.F.C.M.R. 8 Oct. 1976); *United States v. Sasportas*, 2 M.J. 676 (A.F.C. M.R. 23 Sept. 1976).

Accordingly, since the accused was correctly advised as to the maximum penalty according to the law applicable at the time of his plea, see *United States v. Walter*, 20 U.S.C.M.A. 367, 43 C.M.R. 207 (1971), and since there is absolutely no hint of Government misrepresentation or other impermissible conduct here,[2] we hold, as we did in *De La Fuente, supra*, that the accused's plea was not improvident. *United States v. Brady*; *United States v. De La Fuente*; *United States v. Smith*, all *supra*.

In their second assignment, appellate defense counsel assert:

THE COURT–MARTIAL LACKED JURISDICTION OVER THE OFFENSES ALLEGED IN SPECIFICATIONS 2 AND 3.

These specifications allege possession and transfer of heroin in the civilian community of Lompoc, California. Appellate defense counsel argue that the decision in *United States v. McCarthy*, 2 M.J. 26 (24 Sept. 1976) is dispositive of this issue. We disagree.

In *McCarthy*, the accused was convicted for wrongfully transferring three pounds of marijuana to a fellow soldier "just outside" the gate at Fort Campbell, Kentucky. In finding that the military properly exercised its jurisdiction over the offense, the Court utilized the 12 criteria outlined in *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed. 102 (1971) which purport to explain the terms, "service connected" as used in *O'Callahan v. Parker*, 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). Chief Judge Fletcher found that four of the *Relford* criteria weighed in favor of the exercise of military jurisdiction over the offense and

over the accused. However, in dicta, the Court said:

> Merely because the recipient of the contraband was a soldier is insufficient, in and of itself, to establish service connection. . . . The issue requires careful balancing of the *Relford* factors to determine "whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts." *Schlesinger v. Councilman*, 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

As we interpret *McCarthy*, the Court said that the military status of the participants in the offense is insufficient in itself to establish service connection. *O'Callahan v. Parker, supra*. But, of course, military status of the accused is essential to the *exercise* of jurisdiction by a court-martial in the first place. Article 2, Uniform Code of Military Justice. Thus, after establishing the military status of the accused, the court-martial must, in addition, inquire into the facts surrounding the offense itself to determine whether the exercise of military jurisdiction is *"appropriate"* in any given instance. See *Gosa v. Mayden*, 413 U.S. 665, 677, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).

Looking to the instant case, we find that, in the company of an Airman Monholland, the accused drove to Lompoc, California, and purchased one balloon of heroin for $17.00 on 1 March 1976. Early the next day the accused used heroin in Lompoc. Also during that day, the accused entered an apartment in Lompoc, while Monholland remained in the automobile outside, and purchased one balloon of heroin. The accused then transferred that balloon, along with another balloon of heroin he had purchased

---

2. In this respect we note that the staff judge advocate recognized the effect of the decision in *United States v. Courtney*, 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976), both as it applied to maximum punishment and as to the possibility of improvidency of plea, and recommended to the convening authority that he reassess the sentence in accordance with that

decision. On that basis the convening authority approved a reduction in the period of confinement from 24 months to 12 months. In his response to the review the trial defense counsel expressly waived a request for rehearing on sentence if the convening authority adopted the recommended reduction in sentence.

earlier, to Airman Monholland for $40.00. Shortly thereafter Monholland and the accused were arrested by members of the Lompoc police department and agents of the Air Force Office of Special Investigations.

■ Analyzing these facts in terms of the *Relford* criteria, we hold that the transfer of heroin from one serviceman to another "flouts military authority" and poses a "threat to a military post." *Relford, supra,* 401 U.S. at 365, 91 S.Ct. 649. As the Court of Appeals for the Fifth Circuit held in *Peterson v. Goodwin,* 512 F.2d 479, 480 (5th Cir. 1975):

> Heroin addiction among the servicemen at an Air Force base poses a unique threat to the operation of the base. Unless the airmen can respond quickly to orders and can adequately operate the complicated weapons and material subject to their use, the base will be unable to fulfill its vital functions in the defense of our Nation. . . . Heroin addiction presents a serious threat to the good order and discipline of our armed forces. A court-martial has power to deal with that threat. We hold that the sale of heroin by one airman to another is sufficiently related to the functioning of the armed forces for a court-martial to acquire jurisdiction over the offense and the offenders, notwithstanding the attenuating circumstances that at the time of sale both airmen were off base, off duty, and out of uniform.

See also *Committee for GI Rights v. Callaway,* 171 U.S.App.D.C. 73, 518 F.2d 466 (1975); *United States v. Campbell,* 2 M.J. 689 (A.F.C.M.R. 19 Oct. 1976).

■ We likewise hold that the use of a harmful narcotic drug by an airman off base, off duty is likewise a "flouting of military authority" and poses a "threat to a military post," and, hence, is "service connected." This was recognized by the Supreme Court in *Schlesinger v. Councilman,* 420 U.S. 738, 760 n. 34, 95 S.Ct. 1300, 1314, 43 L.Ed.2d 591 (1975):

> It is not surprising, in view of the nature and magnitude of the problem, that in *United States v. Beeker,* 18 U.S.C.M.A.

563, 565, 40 C.M.R. 275, 277 (1969), the Court of Military Appeals found that "use of marihuana and narcotics by military persons on or off a military base has special military significance" in light of the "disastrous effects" of these substances " 'on the health, morale and fitness for duty of persons in the armed forces.' "

We view the possession of heroin by a serviceman off base to be governed by the same rationale, since possession of a harmful narcotic drug, at least in the circumstances of this case, implies a purpose of either use or transfer. The military interest in eradicating the drug threat to its mission accomplishment is a peculiar one, and a "matter in which the military interest is obviously greater and distinct from the civilian interest and one where the distinct military interest can not be adequately vindicated in civilian courts. *Schlesinger v. Councilman, supra.*" *United States v. Campbell, supra.* As we held in *Campbell, supra* :

> It is obvious that the ability of the civilian community to tolerate drug abuse is considerably different from the military. Indeed, with the possible exception of police and firemen, there is no exact counterpart to the requirement that servicemen be physically capable of responding at any time to a recall to duty. This peculiarity of the offense in relation to the military way of life is, in our opinion, the very nature of the "service connection" alluded to in *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and defined in *Relford, supra.*

We therefore hold that the transfer of heroin from one serviceman to another, and the use and possession of heroin by a serviceman off base, off duty and out of uniform is "service connected" and subject to the "appropriate" exercise of military jurisdiction.

The findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.