**UNITED STATES**

v.

**Airman Roby D. HENDERSON, FR 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 Headquarters, 3700th Air Base Group Air Force Military Training Center (ATC).**

**ACM 21963 (f.rev.).**

U. S. Air Force Court of Military Review.

Sentence Adjudged 8 Oct. 1975.

Decided 30 Nov. 1976.

---

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain Thomas S. Markiewicz.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before LeTARTE, C. J., EARLY, Senior Judge, and FORAY, J.

## DECISION

EARLY, Senior Judge:

Pursuant to his pleas, the accused was convicted by a general court-martial, military judge alone, of four specifications alleging possession, transfer and sale of phentermine, sale of marijuana and absence without leave, in violation of Articles 92, 134 and 86, 10 U.S.C. §§ 892, 934, 886 respectively, Uniform Code of Military Justice. The adjudged sentence extended to a bad conduct discharge, confinement at hard labor for 22 months, forfeiture of all pay and allowances and reduction to airman basic. The convening authority reduced the confinement period to 16 months and the forfeitures to $255.00 per month for 18 months and otherwise approved the sentence.

When this case was before us previously we reduced the forfeitures to $240.00 per month for 18 months and affirmed the findings and sentence as modified.[1]

On 3 June 1976, the Court of Military Appeals vacated our decision and remanded the record of trial with directions to hold further proceedings in abeyance pending

---

1. By pretrial agreement the convening authority agreed to approve a sentence not exceeding a bad conduct discharge, confinement at hard labor for 18 months with credit for all time spent in pretrial confinement, forfeiture of two-thirds pay per month for 18 months and reduction to airman basic. On 26 May 1976 all confinement then remaining was suspended until 25 November 1976 and the accused is now on excess leave.

disposition of the issues granted in *United States v. Jackson, United States v. Courtney* and *United States v. McCarthy*. These cases have now been decided: *Jackson* by order (1976), and *Courtney* and *McCarthy* by decision, 24 U.S.C.M.A. 280, 51 C.M.R. 796, 1 M.J. 438 (1976) and 2 M.J. 26 (24 Sept. 1976). The gist of the *Jackson* and *Courtney* decisions is that the maximum punishment for drug offenses under Article 134 must be limited to that provided for virtually identical misconduct proscribed by a general regulation triable under Article 92. *McCarthy*, seemingly overruling a line of earlier cases, prescribes a new approach to the exercise of court-martial jurisdiction over off-base drug offenses.

The operative facts are established by stipulations of expected testimony and the accused's responses during the providency inquiry pursuant to *United States v. Care*, 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969). They establish that on 23 March 1975, the accused offered to sell some yellow capsules, which he called "speed", to an Airman Willden at Willden's off-base residence. Although Willden did not have any money at the time, the accused gave him one capsule. Further, on 23 April 1975, an Airman Blum met the accused at a snack bar on Lackland Air Force Base, Texas, pursuant to a previous agreement, and gave the accused $20.00 for 13 "hits" of "speed". Blum then accompanied the accused to the latter's barracks room where he received five more capsules. After that transaction the accused had 26 capsules remaining. Finally, on 16 July 1975, the accused encountered an Airman McCoy in the barracks day room and offered to sell him marijuana. At first McCoy refused, but he ultimately bought a "lid" for $10.00. After the accused left, McCoy reported the incident to his squadron commander.

At the times of the above transactions both Willden and Blum were "cooperating"

with the Air Force Office of Special Investigations.

Appellate defense counsel assign four errors. In the first they assert:

THE COURT–MARTIAL LACKED JURISDICTION TO TRY THE APPELLANT FOR THE OFF–BASE TRANSFER AND POSSESSION OF PHENTERMINE AS ALLEGED IN SPECIFICATIONS 1 AND 2 OF CHARGE II.

We disagree.

The facts relevant to this issue, while not extensive, are sufficient, in our opinion, to establish the service connection of the alleged offenses. As we have held before, the transfer of harmful drugs to "persons known or believed by the accused to be servicemen clearly represents a flouting of military authority and a threat to the military installation." *United States v. Campbell*, 2 M.J. 689 (A.F.C.M.R. 19 Oct. 1976); see also *United States v. Tinley*, 2 M.J. 694 (A.F.C.M.R. 4 Nov. 1976); *Relford v. Commandant*, 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971); *Schlesinger v. Councilman*, 420 U.S. 738, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Peterson v. Goodwin*, 512 F.2d 479 (5th Cir. 1975). Here the "harmful drug" transferred was, according to evidence offered by the defense, Ionamin (phentermine resin), which is a controlled drug prescribed for the treatment of obesity. While not properly a member of the amphetamine family, its side effects (central nervous stimulation) are much akin. Although the potential harmfulness of the single capsule transferred is limited, we believe that the unprescribed, unregulated use of this drug is sufficiently deleterious to the performance of military duties that its unauthorized transfer to another serviceman constitutes a threat to the military organization in the sense of *Campbell* and *Tinley*, both *supra*.[2] We hold that under the cir-

2. Although the literature on the misuse of central nervous stimulants is relatively new, one authority reported an "Acute Psychotic Reaction following Ingestion of Phentermine," in 1964. See Rubin, op. cit., 120 American Journal of Psychiatry 1124–5 (1964). Therein a case study of a female who took 8 "Ionamine 30" tablets was reported. She presented herself "in a severely hyperactive state, with a flight of ideas and markedly increased expressed ambivalent feelings toward her husband and parents." Chemical therapy over a

cumstances of this case the transfer by the accused to a fellow serviceman is service connected. *Relford v. Commandant, supra.*

■ In their second assignment appellate defense counsel assert:

THE APPELLANT WAS DENIED DUE PROCESS AND EQUAL PROTECTION OF THE LAW BY BEING PROSE-CUTED UNDER ARTICLE 134 FOR THE DRUG OFFENSE ALLEGED IN CHARGE III RATHER THAN UNDER ARTICLE 92.

We disagree.

At trial the parties agreed that the maximum punishment included, among other things, confinement at hard labor for 13 years and six months. This was the correct maximum under the then-existing law. See *United States v. Walter,* 20 U.S.C.M.A. 367, 43 C.M.R. 207 (1971). However, had the decision in *Courtney, supra,* been in existence, the total authorized confinement at hard labor would have been reduced by three years. We considered this contention in our original decision on our own motion. There we said:

[W]e are convinced that the accused could not have suffered prejudicial harm. The difference in potential maximum punishment in this case amounts to only three years: i. e., ten and one-half years as contrasted to thirteen and one-half years. Since the military judge sentenced the accused to only twenty-two months confinement at hard labor, and the convening authority, pursuant to the pretrial agreement was limited to a maximum of eighteen months confinement at hard labor, . . . we see no fair risk that either the military judge or the convening authority could have been influenced

by the theoretically greater maximum punishment of Article 134 as opposed to Article 92. . . . Accordingly, we consider such an error—if in fact it be one—to be de minimis.

We affirm our original holding. Further, we have recently held that the *Courtney* decision has only prospective application. See *United States v. DeLaFuente,* 2 M.J. 668 (f.rev.) (A.F.C.M.R. 16 Sept. 1976); *United States v. Wilson,* 2 M.J. 683 (A.F. C.M.R. 15 Oct. 1976).

In their third assignment, appellate defense counsel assert:

THE MILITARY JUDGE ERRED IN NOT CONSIDERING SPECIFICA-TIONS 1 WITH 2 AND 4 WITH 5 OF CHARGE II MULTIPLICIOUS FOR SENTENCING.

We disagree.

■ It is clear from the stipulations of testimony and from the accused's responses during the providency inquiry that the amount of drugs, in each instance, transferred or sold is distinct from the amount possessed thereafter. Or, stated another way: the amount alleged to have been possessed is the remainder of that originally possessed by the accused less the amount he transferred or sold. Appellate defense counsel contend that with the facts in this posture, the case of *United States v. Smith,* 24 U.S.C.M.A. 79, 51 C.M.R. 252, 1 M.J. 260 (1976) is dispositive. We do not agree. In *Smith* the accused was convicted of a wrongful *attempt* to sell Mandrax and with wrongful possession of the same drug. The Court found that these two offenses were so integrated as to emerge as a single event subject to only a single punishment since Smith did not part with the drug and the

two-week period was necessary to restore her to her former condition. The writer concluded: "Since most of the new appetite suppressants possess amphetamine-like central nervous system activity, the possibility exists of a psychosis following their injudicious use."

The effects of the abuse of amphetamine-like drugs is discussed in Kalant, The amphetamines, 122 (2d ed. 1973) (where phentermine is given its full chemical name of phenyl*tert* -butylamine). In general see also statements of Drs. Jasinski and Ellinwood before the Subcommittee on Monopoly chaired by Senator Gaylord Nelson (November 1976).

possession charged was of the same quantum. Here a completed transfer and sale took place, and the amount possessed was the residuum remaining in the accused's possession, an amount that he might use, transfer or sell at some future time. This distinction is, to us, significant, and we hold that under these factual situations, the offenses are separately punishable. *United States v. Culberson*, 1 M.J. 1181 (A.F.C. M.R. 1976), pet. denied (8 Sept. 1976); *United States v. Irving*, 2 M.J. 1188 (f. rev.) (A.F.C.M.R. 17 June 1976), pet. granted (4 Oct. 1976).

In their fourth assignment, appellate defense counsel assert:

THE APPELLANT'S PLEAS WERE RENDERED IMPROVIDENT BY MISADVICE AS TO THE MAXIMUM PUNISHMENT.

Again we disagree.

█ As shown above, the *Courtney-Jackson* decisions limit the maximum confinement for drug offenses charged under Article 134 to the maximum punishment prescribed for virtually identical offenses under Article 92. In *United States v. Graves*, [order] (6 Aug. 1976), the Court of Military Appeals returned the record of trial to the Army Court of Military Review for further consideration in light of the decision in *United States v. Harden*, 24 U.S. C.M.A. 76, 51 C.M.R. 249, 1 M.J. 258 (1976). There, the Court held that the substantial difference between the maximum punishment advice provided by the military judge and the true maximum, 20 years as opposed to 10 years confinement, rendered the accused's plea of guilty improvident. Here, the difference in punishment is only three years, thirteen and one-half years as opposed to ten and one-half. As we said in *United States v. DeLaFuente*, 2 M.J. 668 (f.rev.) (A.F.C.M.R. 16 Sept. 1976):

[W]e are satisfied that the difference in punishment in the instant case, two years confinement at hard labor instead of five

years, is not of such magnitude as to warrant vacating the accused's plea of guilty as improvident . . . Further, in view of the accused's undeniable guilt and the lenient sentence imposed, we perceive no possibility of prejudice. (Citations omitted.)

We also held in *DeLaFuente* that the decisions in *Graves* and *Courtney*, both *supra*, have only prospective application with respect to the providency of guilty pleas entered in the belief that the Article 134 maximum punishments were appropriate even though the same misconduct was prohibited under Article 92. See also *United States v. Smith*, 2 M.J. 681 (f.rev.) (A.F. C.M.R. 8 Oct. 1976); *United States v. Sasportas*, 2 M.J. 676 (f.rev.) (A.F.C.M.R. 23 Sept. 1976); *United States v. Standley*, No. 21897, 2 M.J. 679 (f.rev.) (A.F.C.M.R. 8 Oct. 1976); *Brady v. United States*, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970); *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Here, the accused pleaded and was convicted and sentenced before *Courtney* was decided. Hence the maximum confinement then provided for the marijuana sale was five years, as the accused was correctly advised. *United States v. Walter*, 20 U.S.C.M.A. 367, 43 C.M.R. 207 (1971). Accordingly, his plea of guilty to this offense was provident.

The findings of guilty and the sentence, as modified in our previous decision, are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.