UNITED STATES

v.

Sergeant Richard D. KURIGER, FR 522–70–7417 1954th Communications Squadron Lowry Technical Training Center (ATC).

ACM 21979 (f rev).

U. S. Air Force Court of Military Review.

Sentence Adjudged 14 Oct. 1975.

Decided 2 Dec. 1976.

---

Appellate Counsel for the Accused: Colonel Robert W. Norris and Captain Gary C. Smallridge.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION UPON FURTHER REVIEW

EARLY, Senior Judge:

Pursuant to his pleas, the accused was convicted by general court-martial, military judge alone, of two specifications alleging transfer of marijuana and one specification of transferring lysergic acid diethylamide (LSD) in violation of Articles 134 and 92, 10 U.S.C. §§ 934 and 892, Uniform Code of Military Justice. The approved sentence extends to confinement at hard labor for one year, forfeiture of $240.00 per month for 12 months and reduction to airman basic.[1]

This case originally came to us on the merits, and, by an unpublished, per curiam opinion dated 9 February 1976, we affirmed the findings and sentence. However, on 3 May 1976, the Court of Military Appeals vacated our decision with directions to hold

further proceedings in abeyance pending disposition of the issue granted in *United States v. Jackson, United States v. Courtney* and *United States v. McCarthy.* These having been decided, this case is again before us for decision.[2]

In *Courtney,* supra, the Court of Military Appeals held that, in the absence of any standard for determining whether to charge a drug offense under Article 134 or under Article 92, where there is an applicable service regulation proscribing the conduct involved, the maximum sentence imposable is limited to that under Article 92 rather than Article 134.

In *McCarthy,* supra, the accused was convicted for wrongfully transferring three pounds of marijuana to a fellow soldier "just outside" a gate at Fort Campbell, Kentucky. In finding that the military properly exercised its jurisdiction over the offense and the offenders, the Court turned to the 12 criteria outlined in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), which explains the terms, "service connection," as used in *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969). The Court found that four of the *Relford* criteria weighed in favor of the exercise of military jurisdiction, but, in apparently rejecting a line of earlier cases, held, in dicta, that the mere fact that the "recipient of the contraband was a soldier is insufficient, in and of itself, to establish service connection." What was required was a "careful balancing of the *Relford* factors to determine 'whether the military interest in deterring the offense is distinct from and greater than that of civilian society, and whether the distinct military interest can be vindicated adequately in civilian courts.' "

The pertinent facts of the instant case come from a stipulation of fact and the accused's responses during the providency

1. On 27 February 1976, the Commander, Lowry Technical Training Center, suspended confinement and forfeitures remaining as of that date until 26 June 1976 and restored the accused to duty.

2. *Jackson* was decided by order (2 July 1976), and *Courtney* and *McCarthy* by opinion, 24 U.S.C.M.A. 280, 51 C.M.R. 706, 1 M.J. 438 (1976) and 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (24 September 1976), respectively.

inquiry. During the month of March, 1975, an Airman Gammill asked the accused to obtain for him a "lid" (ounce) of marijuana, and pursuant to the agreement, gave the accused $4.00 towards a total purchase price of $14.00. On 19 March 1975, Gammill, then working with agents of the Air Force Office of Special Investigations (OSI), went to the accused's off-base apartment in Denver, Colorado, to obtain the "lid." The accused told Gammill that he did not have a "lid," but gave him a lesser amount of marijuana in exchange for the $4.00. Some time later, and prior to 1 May 1975, Gammill asked the accused to procure for him two "lids" of marijuana to be delivered at the accused's apartment on 1 May 1975. It was agreed that the price would be $30.00 to be paid at time of delivery. On the appointed date Gammill with agents of the OSI went to the accused's off base apartment with $30.00 given to him by the agents. The accused gave him the two "lids," but included a "hit" of mescaline as part of the price. Pursuant to a prearranged signal, two detectives of the Denver Police Department arrested the accused and Gammill.

Subsequent laboratory analysis disclosed that the "lids" purchased by Gammill contained marijuana, and the "mescaline" was, in reality, LSD.

## I

■ Appellate defense counsel contend that the court-martial lacked jurisdiction to try the accused since all the alleged offenses were committed off-base. We disagree.

While we agree that the *Relford* criteria may be utilized in determining whether the military may properly exercise its jurisdiction over offenses committed off base, the difficulty arises in applying these criteria to drug offenses which, although occurring off base, have, at least, a potential adverse effect on the health and performance of duty of the transferee. Other courts have documented the deleterious effect of drug abuse on the combat readiness and efficiency of the armed forces. As one court has held:

Unlike the civilian population, the military forces are charged with the responsibility of continuously protecting the nation's interests both on the domestic and international level. Widespread use of marijuana, hashish and other drugs can have a serious debilitating effect on the ability of the Armed Services to perform their mission. As noted in the extensive evidence submitted by the appellants, drug use among GIs in the USAREUR has (a) lessened the on-the-job efficiency of GIs; (b) significantly reduced the number of effective soldiers in the European Command; (c) required the expenditure of enormous amounts of supervisory time to monitor all aspects of the drug control and rehabilitation process; (d) strained the limited medical resources of the European Command; and (e) resulted in an increased incidence of crime.

*Committee for GI Rights v. Callaway,* 171 U.S.App.D.C. 73, 83, 518 F.2d 466, 476 (1975).

The United States Supreme Court has obliquely acknowledged the "special military significance" of narcotics and marijuana by military persons. See *Schlesinger v. Councilman,* 420 U.S. 738, 760–1, n. 34, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975).

This Court, too, has recognized the peculiar interest of the military in controlling drug abuse among its members. As we said in *United States v. Campbell,* 2 M.J. 689 (A.F.C.M.R. 19 October 1976):

This is a matter in which the military interest is obviously greater and distinct from the civilian interest and one where the distinct military interest cannot be adequately vindicated in civilian courts. *Schlesinger v. Councilman,* supra. Whatever might have been the ultimate result had the accused been tried in civilian courts, the military interest in eradicating transfers of drugs between servicemen is far different from the civilian interest in controlling the drug problems in society. It is obvious that the ability of the civilian community to tolerate drug abuse is considerably different from

the military. Indeed, with the possible exception of police and firemen, there is no exact counterpart to the requirement that servicemen be physically capable of responding at any time to a recall to duty. This peculiarity of the offense in relation to the military way of life is, in our opinion, the very nature of the "service connection" alluded to in *O'Callahan v. Parker,* 395 U.S. 258, 89 S.Ct. 1683, 23 L.Ed.2d 291 (1969), and defined in *Relford,* supra.

We hold, therefore, that the exercise of military jurisdiction in this case was "appropriate." *Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973); *United States v. Campbell,* supra; *United States v. Tinley,* 2 M.J. 694 (A.F.C.M.R. 4 November 1976).

## II

■ In their second assertion of error appellate defense counsel contend that the accused was denied due process and equal protection of law by being prosecuted under Article 134 for drug offenses as opposed to Article 92, thereby unjustifiably increasing the total quantum of punishment.[3]

As charged under the law existing at the time of trial, the maximum sentence to confinement at hard labor was 12 years (five years each for the marijuana transfers plus two years for the LSD transfer alleged under Article 92). See *United States v. Walter,* 20 U.S.C.M.A. 367, 43 C.M.R. 207 (1971). Had all offenses been alleged under Article 92, the maximum period of confinement at hard labor would have been six years. During the providency inquiry conducted in accordance with the decision of *United States v. Care,* 18 U.S.C.M.A. 535, 40 C.M.R. 247 (1969), the defense counsel, in response to the military judge's inquiry as to his agreement with the maximum punishment stated above, said:

> Your honor, for the purposes of the *Care* instruction and advice, I have no quarrel with that advice to the accused.

Subsequently, however, during the presentencing hearing, the defense counsel argued that the maximum punishment should have been the same as if the specifications had been alleged under Article 92, i. e., six years confinement at hard labor.

We believe that our holding in *United States v. Sasportas,* No. 21917 (f rev.), 2 M.J. 676 (A.F.C.M.R. 23 September 1976) is dispositive of this assertion. Therein we held:

> When an accused is aware of the possibility that the maximum punishment for the offenses of which he intends to plead guilty may be substantially less than perceived by the court, and he pleads guilty notwithstanding this awareness, there is no requirement in law that his pleas be set aside. *United States v. Frangoules,* 24 U.S.C.M.A. 317, 52 C.M.R. 28, 1 M.J. 467 (3 September 1976); *United States v. Kleinhans,* 14 U.S.C.M.A. 496, 34 C.M.R. 276 (1964). Cf. *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

Here, defense counsel's response and his subsequent argument clearly demonstrated his awareness of the potential issue ultimately resolved in *Courtney* and *Jackson,* both supra. Hence, the accused's plea was providently made. In any event, as we have consistently held, the decision in *United States v. Courtney* has only prospective application. *United States v. De La Fuente,* No. 21864 (f rev.), 2 M.J. 668 (A.F.C.M.R. 16 September 1976); *United States v. Sasportas,* supra; *United States v. Smith,* No. 21975 (f rev.), 2 M.J. 68 (A.F.C.M.R. 8 October 1976); *United States v. Standley,* 2 M.J. 679 (A.F.C.M.R. 8 October 1976).

Finally, in view of the sentence actually imposed on the accused, we find no possibility that the accused could have been prejudiced by the possible difference in confinement limitations. *United States v. Thomas,*

---

3. Inherent in this argument is the issue of the providency of the accused's plea of guilty. See *United States v. Graves* (6 August 1976) wherein, by order, the Court returned a case similar to this to the Army Court of Military Review for further consideration as to the providency issue.

2 M.J. 263 (A.F.C.M.R. 13 August 1976); *United States v. Courtney,* supra.

The findings of guilty and the sentence are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.