UNITED STATES

v.

Airman First Class Robert E. PICKEL, FR 056–48–9931, 2d Communications Squadron Lowry Technical Training Center (ATC).

ACM 22156.

U. S. Air Force Court of Military Review.

10 March 1977.

Colonel Robert W. Norris and Captain David A. Bateman, Appellate Counsel for the Accused.

Colonel Julius C. Ullerich, Jr., Appellate Counsel for the United States.

Before LeTARTE, EARLY and FORAY, Appellate Military Judges.

## DECISION

EARLY, Senior Judge:

Tried by general court-martial, military judge alone, the accused was convicted, pursuant to his pleas, of nine specifications alleging use, sale, transfer and possession of amphetamines and marijuana, in violation of Article 92, Uniform Code of Military Justice, 10 U.S.C. § 892. The approved sentence extends to a bad conduct discharge, confinement at hard labor for one year, forfeiture of $240.00 per month for 12 months and reduction to airman basic.

Appellant defense counsel assert that: THE COURT–MARTIAL LACKED JURISDICTION OVER THE DRUG OFFENSES ALLEGED IN SPECIFICATIONS 2–9 OF THE CHARGE.[1]

Specification 2 alleges off-base possession of amphetamines at Denver, Colorado. Specification 6 alleges use of marijuana at Aurora, Colorado, and Specification 9 alleges use of amphetamines at Aurora. Specifications 3, 4, 5, 7 and 8 allege the off-base sale or transfer of amphetamines or marijuana by the accused to three fellow servicemen at divers times.

1. Specification 1 alleges the sale of amphetamines at Buckley Air National Guard Base, Colorado. Jurisdiction over this offense is not contested.

In overruling the motion to dismiss for lack of service-connection, the military judge made special findings that the accused was, at the times alleged, a "duty airman with the United States Air Force;" that the accused was aware that the airmen to whom he sold amphetamines and marijuana were active duty members of the Air Force; and that "as a duty airman, the accused's use, possession, transfer and sale of the illicit drugs alleged in Specifications 2 through 9 of the Charge, constitute [d] a flouting of military authority and pose[d] a threat to military personnel and hence the military community."

Appellate defense counsel argue that, in light of holdings in *United States v. Williams*, 25 U.S.C.M.A. 176, 54 C.M.R. 284, 2 M.J. 81 (1976); *United States v. McCarthy*, 25 U.S.C.M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976); and *United States v. Hedlund*, 25 U.S.C.M.A. 1, 54 C.M.R. 1, 2 M.J. 11 (1976), the military improperly exercised its jurisdiction over these offenses.

In *Williams*, supra, the accused was convicted of possession of hashish which was found in his off-base apartment by civilian police and Air Force agents pursuant to a civilian search warrant. The Court of Military Appeals, finding that "the evidence of record supports but one conclusion, that the appellant purchased the hashish in the civilian community for his personal off-post, off-duty use," held that "[t]he off-post, off-duty use of hashish by a serviceman standing alone is simply not enough [to support court-martial jurisdiction]." 54 C.M.R. 286, 2 M.J. 82.

In *McCarthy*, supra, the accused was convicted of wrongfully transferring three pounds of marijuana to a fellow soldier "just outside" gate 3 of Fort Campbell, Kentucky. In finding that the court-martial properly exercised its jurisdiction over the offense and the accused, the Court held:

The military interest in this offense is pervasive. The entire criminal venture was developed by soldiers who had associated in their military unit and both of whom knew that the next most likely recipient of their contraband would be fellow soldiers on post. Under such circumstances, the military community certainly had the overriding, if not exclusive, interest in prosecuting this offense.

54 C.M.R. at 35, 2 M.J. 29.

■ We agree with appellate defense counsel that the holdings of these cases prevent the exercise of court-martial jurisdiction over the off-base use of marijuana (Specification 6), and the off-base possession of amphetamines (Specification 2). In the latter instance, the "possession" was for the purpose of sale to a Drug Enforcement Administration agent having no connection with the armed forces. Accordingly, the findings of guilty as to Specifications 2 and 6 are set aside.

■ Turning now to the off-base use of amphetamines (Specification 9), we find the exercise of military jurisdiction appropriate. Amphetamines produce far more debilitating effects on the serviceman's ability to perform his military duties than would the hashish spoken of in *Williams*, supra. The use of such drugs would adversely affect the morale, discipline and health of military personnel and the integrity of the base, the military operation and the military mission.[2] *United States v. Campbell*, 54

---

2. "The amphetamines are general [central nervous system] stimulants; they produce mood elevation with increased wakefulness, alertness, confidence, concentration, and physical performance. Systolic and diastolic blood pressures are raised, the respiratory center is stimulated, and appetite is suppressed through a central effect. . . . Insomnia, dizziness, excessive sweating, tremors, and euphoria may occur; a feeling of depression and fatigue is usual after the therapeutic effects wear off. Anxiety and panic states are seen especially in psychotic patients receiving amphetamines. Cardiovascular effects include vascular headaches, palpitations, arrhythmias, hyper- or hypotension, and circulatory collapse. Convulsions, cerebral hemorrhages, and coma have been reported. Anorexia, nausea, vomiting, and diarrhea are seen. The toxic dose of amphetamines varies widely. . . .

The greatest danger of the amphetamines is dependence. Tolerance develops rapidly so that the dose must be increased to achieve a therapeutic affect. In addition, the 'let-

C.M.R. 447, 2 M.J. 689 (A.F.C.M.R.1976); *Relford v. Commandant,* 401 U.S. 355, 367, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971).

■ We also find the exercise of court-martial jurisdiction over the sale and transfer offenses (Specifications 3, 4, 5, 7 and 8) appropriate since the recipient of the amphetamines or marijuana was, in each instance, a fellow serviceman. We have previously held that the transfer of harmful drugs to "persons known or believed by the accused to be servicemen clearly represents a flouting of military authority and a threat to the military installation." *United States v. Campbell,* supra; *Relford v. Commandant,* supra; see also *United States v. Tinley,* 54 C.M.R. 255, 2 M.J. 694 (A.F.C. M.R.1976); *United States v. Henderson,* 54 C.M.R. 523, 2 M.J. 321 (A.F.C.M.R.1976).

■ The threat posed to the military establishment by illicit drug transfer and use has been recognized by other courts. See *Schlesinger v. Councilman,* 420 U.S. 738, 760, 95 S.Ct. 1300, 43 L.Ed.2d 591 (1975); *Peterson v. Goodwin,* 512 F.2d 479 (5th Cir. 1975), cert. denied, 423 U.S. 931, 96 S.Ct. 282, 46 L.Ed.2d 260 (1976); *Committee for GI Rights v. Callaway,* 171 U.S.App.D.C. 73, 518 F.2d 466 (1975). We believe that the military has the power to counter that threat where it emanates from a military accused. Leaving this responsibility to civilian courts and law enforcement agencies would not be conducive to effective discipline and would leave the military establishment at the mercy of varying levels of enforcement and varying degrees of punishment. *United States v. Chastain,* 54 C.M.R. 765, 2 M.J. 735 (A.F.C.M.R.1976). As we said in *United States v. Murphy,* 54 C.M.R. 454, 458, 2 M.J. 704, 706 (A.F.C.M.R.1976):

[W]e believe . . . that a significant part of the military budget is presently directed toward the investigation of those military personnel who are trafficking in drugs. Prosecution of these individuals in military courts is essential simply because of the military's unique function. In sum, if the military drug problem is to be eliminated, prompt and efficient disposition of those military personnel who traffic in drugs, whether on or off base, must be pursued. This can only be accomplished with any shred of uniformity, by military investigators and in military courts.

Looking at the evidence as a whole, it is clear that the accused was a drug "pusher" and that his primary buyers were fellow servicemen he met through his squadron activities. We believe that Congress intended that the military have the power to deal with illicit drug usage by its members and the power to reach the source of such drugs where he is also a military member even if the transfer/sale occurs off-base. *United States v. McCarthy,* supra. We hold the exercise of court-martial jurisdiction here to be appropriate. See *Gosa v. Mayden,* 413 U.S. 665, 93 S.Ct. 2926, 37 L.Ed.2d 873 (1973).

The findings of guilty of Specifications 2 and 6 are set aside and they are ordered dismissed. The remaining findings of guilty are correct in law and fact and are affirmed. Reassessing the sentence in view of the approved findings of guilty, we find appropriate only so much as provides for a bad conduct discharge, confinement at hard labor for ten months, forfeiture of $240.00 per month for ten months and reduction to airman basic.

down' feeling which occurs a few hours after taking an amphetamine is relieved by taking another dose. Thus, the situation predisposes to a progressive increase in dosage, and to dependence. Symptoms of chronic addiction include insomnia, weight loss, irritability, and restlessness. A syndrome resembling paranoid schizophrenia may appear; patients display marked anxiety, paranoid delusions, and visual and auditory hallucinations. Patients should be hospitalized for treatment of amphetamine addiction. Since there are no serious withdrawal symptoms, the drug can be stopped immediately. The patient should be heavily sedated for the first week. Symptoms usually resolve within 10 to 14 days." The Merck Manual 1612–13 (12th Ed. 1972).

The findings of guilty and the sentence, both as modified, are

AFFIRMED.

LeTARTE, Chief Judge, and FORAY, Judge, concur.