**UNITED STATES**

**v.**

**Airman Basic James D. THOMAS, FR 539–70–4903 3442d School Squadron Lowry Technical Training Center (ATC).**

**ACM 22155.**

U. S. Air Force Court of Military Review.

31 March 1977.

Appellate Counsel for the Accused: Colonel Robert W. Norris and Lieutenant Colonel Larry G. Stephens.

Appellate Counsel for the United States: Colonel Julius C. Ullerich, Jr., and Captain W. Alan Woodford, USAFR.

Before BUEHLER, HERMAN and ORSER, JJ.

DECISION

HERMAN, Judge:

Tried before a military judge sitting as a general court-martial, the accused was convicted, consonant with his pleas, of possession of marihuana, LSD, and another drug containing codeine, as well as transfer of methaqualone and solicitation to sell tetrahydrocannabinol (THC) to other airmen, in violation of Articles 92 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892,

934. His approved sentence consists of a bad conduct discharge, confinement at hard labor for eight months and total forfeitures.

Appellate defense counsel have assigned two errors, both of which are considered to be without merit. In one assignment, they assert that the court-martial improperly exercised jurisdiction over the off-base transfer of methaqualone. The evidence reveals that the transfer took place at an off-base pool hall and that the accused and the military transferee were close friends who worked in the same building on base and socialized during off-duty time. At the pool hall, the accused purchased several methaqualone pills and immediately transferred one of these to his friend. The friend was to pay him for it when they returned to the base and their barracks. In fact, they proceeded directly to the base where, upon a consent search, they were each found to be in possession of the methaqualone.

■ Using the criteria enunciated in *Relford v. Commandant,* 401 U.S. 355, 91 S.Ct. 649, 28 L.Ed.2d 102 (1971), we find a dominant military interest in these circumstances since a specific threat to the military community was posed and military authority was flouted. Not only were the accused and the transferee close friends in the same military unit, but they also contemplated payment for the drug on base, immediately set forth for the base after they acquired it, and were apprehended possessing the drug as they entered the base. The transfer of a prohibited drug off-base, between military members who contemplate bringing the contraband on a military installation, poses a much greater threat to the military community than the civilian environment and provides an overwhelming interest in the military for the prosecution of this offense. See *United States v. McCarthy,* 25 U.S.C. M.A. 30, 54 C.M.R. 30, 2 M.J. 26 (1976); *Cf. United States v. Williams,* 25 U.S.C. M.A. 176, 54 C.M.R. 284, 2 M.J. 81 (1976). See also, *United States v. Guillot,* 54 C.M.R. 732, 2 M.J. 729 (A.F.C.M.R.1976); *United States v. Campbell,* 54 C.M.R. 447, 2 M.J. 689 (A.F.C.M.R.1976).

■ One other matter, revealed during our scrutiny of the record, commands our attention. On 27 December 1976, two weeks after his court-martial, the accused requested that the convening authority defer his confinement and forfeitures in excess of four months. His stated purpose was to insure his confinement at the Correction and Rehabilitation Group at Lowry Air Force Base, rather than at the United States Disciplinary Barracks. On 29 December, the convening authority promulgated his action, stating in part:

> The service of the sentence to confinement at hard labor is deferred effective 13 April 1977. The remaining confinement will not be served until such time as the sentence is ordered into execution, unless such deferment is sooner rescinded. The forfeitures shall apply to pay and allowances becoming due on and after the date of this action, until 13 April 1977, at which time the application of forfeitures is deferred until the sentence is ordered into execution, unless the deferment of confinement is sooner rescinded.

The use made of the deferment alternative by the convening authority in this case does not comport with the legislative intent evidenced at the time of enactment of the Military Justice Act of 1968.[1] That Act amended Article 57 of the Uniform Code of Military Justice to permit deferment of sentence to confinement by the convening authority or officer exercising general court-martial jurisdiction.

The report of the Senate Armed Service Committee[2] accompanying this legislation explains the purpose of deferment of confinement:

> A new provision . . . is inserted which would amend Article 57 of the code

1. Pub.L.No.90–632, § 2(24), 82 Stat. 1335, 1341 (1968).

2. S.Rep. No. 1601, 90th Cong., 2d Sess. (1968), reprinted in [1968] U.S.Code Cong. & Ad.News, p. 4501.

. . . to authorize convening authorities to defer execution of certain sentences to confinement during the appellate review process, thus providing for the first time *a procedure similar to release on bail pending appeal in civilian courts.*

. . . . .

For the convicted military accused, no practical provision for release during the period of appellate review now exists. Article 57(b) provides that a sentence to confinement begins to run from the date it is adjudged by the court, with the exception that periods during which it is suspended are to be excluded in computing the term of confinement. The Court of Military Appeals has held (*United States v. May,* 10 U.S.C.M.A. 358, 27 C.M.R. 415 (1959)) that a suspension of a sentence makes the accused a probationer as to the part suspended, and that the suspension may not thereafter be vacated except after a hearing to establish that the accused has violated his probation. Suspension of sentence cannot, therefore, be used effectively as a means of release pending appeal. In consequence, a convicted military prisoner must begin serving his sentence to confinement from the date it is adjudged, even though it ultimately may be reversed on appeal.

. . . . .

This amendment will correct this situation by authorizing a means of release from confinement during appellate review. Under the proposed new subsection (d), Article 57, the convening authority or the officer exercising general court-martial jurisdiction over the command could in his discretion defer an individual's service of a sentence to confinement which has not been ordered executed, upon the accused's application.

The deferment would be terminated and the sentence would begin to run automatically when the sentence is approved upon review and ordered executed. The discretion exercised would be very broad and would be vested exclusively in the convening authority or the officer exercising general court-martial jurisdiction.[3] (Emphasis supplied)

The manifest purpose of this legislation was to fill the need which sometimes arises to postpone confinement until the appellate process is complete, without creating a probationer status in the accused. The convening authority's action in this case evidences no intent to postpone confinement; nor, for that matter, was postponement the objective of the accused when he requested the deferment. On the contrary, confinement was intended to continue, at least until 13 April 1977. The accused's desire was to avoid serving his sentence at the United States Disciplinary Barracks, to which he would have been sent with an approved sentence of eight months confinement.[4] The convening authority, in an attempt to accommodate this desire while preserving the entire eight months confinement, deferred a portion of the confinement *in futuro.* We find no authority in the *Code* or Manual for Courts-Martial for this action which bears no relationship whatsoever to the plain intent of Congress to create a military counterpart to bail pending appeal in the civilian courts. Accordingly, that part of the action of the convening authority which purports to defer the confinement and forfeitures is a nullity. Nevertheless, there can be no prejudice to the accused, since his sentence is in no manner increased or made more severe by our action; deferment does not serve to reduce, but rather to postpone a portion of a sentence, and is not a form of clemency. Manual for Courts-Martial, *supra,* paragraph 88*f.*

---

3. *Id.* at 4503, 4513.

4. Air Force Regulation 125–18, Operation of Air Force Correction and Detention Facilities, paragraph 5–9, 16 January 1977, provides that if entry into rehabilitation is not designated, the convening authority will direct confinement to be served, "c. At the USDB when the male prisoner has a punitive discharge and more than 120 days remaining to serve on his sentence."

On 23 February 1977, the convening authority rescinded the *in futuro* deferment of confinement and forfeitures and designated the United States Disciplinary Barracks, Fort Leavenworth, Kansas as the place of confinement.[5]  It follows from our rationale and decision aforestated that the rescission of deferment is also of no legal consequence.[6]

 Air Force Regulation 125–18 provides for confinement at the United States Disciplinary Barracks where more than 120 days are to be served;[7] thus, that portion of the supplemental action is entirely proper.  Further, place of confinement is a matter within the discretion of the officer ordering the sentence into execution.  Article 58(a), *Code,* paragraph 93, *Manual,* both supra.  See *United States v. Scott,* 46 C.M.R. 541 (C.G.C.M.R.1971).

The findings of guilty and the sentence are

AFFIRMED.

BUEHLER, Senior Judge, and ORSER, Judge, concur.

---

5.  The convening authority in this case occupies a unique position, as he is also the general court-martial convening authority for the Corrections and Rehabilitation Group (now Squadron); as such, he retained jurisdiction over the accused after his initial action.  Any other commander would ordinarily lose such control, as the accused would have been sent elsewhere for confinement.

6.  If the facts were otherwise, and the deferment of confinement had actually been effectuated on 13 April 1977, the convening authority taking his rescission action subsequent thereto, a different analysis and conclusion might be necessary.  We then might be obliged to conclude that certain contingent or inchoate rights vested at the time of effectuation of the deferment.  Specifically, the totality of events could conceivably be viewed as creating a *de facto* suspension of confinement and forfeitures, even though labelled deferment, with the concomitant right to a hearing before vacation of suspension.  Articles 71(d), 72(a), Uniform Code of Military Justice; paragraphs 88*e*, 97*b*, Manual for Courts-Martial, 1969 (Rev.).

